In the Matter of Disciplinary Proceedings Regarding the Licenses and Right to Practice Dentistry of Peter A. BASSETT, D.D.S.; the National Denture Center, P.C.; and the Colorado Family Dental Center, P.C., Appellants,

v.

STATE BOARD OF DENTAL EXAMINERS, Appellee.

No. 84CA1226.

Colorado Court of Appeals, Div. II.

Sept. 4, 1986.

Erickson, Nicholls, Kusic, Frank & Finger, Jon B. Kusic, Judith F. Tartaglia, Denver, for appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Beverly Fulton Beckett, Thomas J. Lyons, Asst. Attys. Gen., Denver, for appellee.

BABCOCK, Judge.

Peter A. Bassett appeals the final order of the State Board of Dental Examiners (Board) revoking his license to practice dentistry in Colorado. He alleges that the Board erred in: (1) preventing him from offering expert testimony; (2) adopting findings which lacked sufficient evidentiary support in the record; (3) upholding the grant of partial summary judgment; (4) adopting ultimate conclusions that lacked sufficient findings; and (5) revoking his license for three years. We affirm in part, reverse in part, and remand for further proceedings.

Bassett was charged with multiple violations of § 12–35–118(1), C.R.S. (1985 Repl. Vol. 5) stemming from the complaints of three patients. After an extensive hearing on the complaints, the Board adopted the findings and conclusions of the hearing of-

ficer and revoked Bassett's license to practice dentistry for three years.

## I.

■ Bassett first contends that his due process rights were violated when he was prevented from offering expert testimony on the issue whether his failure to take an intra-operative x-ray of a crowned tooth constituted dental malpractice. He argues that the procedure employed by the hearing officer, concerning testimony of experts, effectively denied him the opportunity to rebut the statements of the Board's experts. We disagree.

Prior to the hearing, the hearing officer issued an order stating in pertinent part:

"4. All direct testimony of expert witnesses ... shall be submitted in writing on or before August 15, 1983. Examination of such witnesses at the hearing shall be limited to declaration under oath that the presubmitted statement is true, cross examination, redirect examination *and such further examination as may be appropriate.*

"5. All rebuttal testimony from expert witnesses ... shall be submitted in writing on or before August 22, 1983 ...." (emphasis added)

The board fully complied with the order. Two of their experts' pre-hearing statements stressed the need for intra-operative x-rays in order to prevent a perforation of the tooth while drilling, and one of the experts asserted that Bassett's failure to take such x-ray was conduct falling below the required standard of knowledge, skill, and care for dentists. Bassett also complied with the order, but his rebuttal expert's statement did not address the intra-operative x-ray issue.

At the hearing, the board's experts were subjected to full cross-examination by Bassett regarding their pre-hearing statements, including their opinions on the need for intra-operative x-rays. Bassett's rebuttal witness was thereafter restricted to testimony about matters raised at the hearing which were "extraneous to the presubmitted direct testimony...." He was not al-lowed to testify concerning intra-operative x-rays because he had not addressed this issue in his presubmitted testimony. Bassett argued that his expert should be allowed to testify to the effect that "no one in their right mind anticipated [Bassett] would have x-rayed through a crown." The hearing officer found that these matters had been raised in the Board's presubmitted direct testimony and, therefore, should have been addressed in the expert's presubmitted rebuttal. Further, the hearing officer took as admitted the fact that it was impossible to take an x-ray through a crown.

Under the circumstances of this case, we conclude that Bassett was not denied due process of law. The procedure followed by the hearing officer was authorized by statute, *see* § 24–4–105(7), C.R.S. (1982 Repl. Vol. 10); Bassett had the opportunity to present rebuttal evidence via a presubmitted statement, but failed to do so; and Bassett fully cross-examined the Board's experts on the intra-operative x-ray issue. Moreover, the hearing officer's findings alluded only to the fact that no intra-operative x-ray was taken, and his conclusions of law made no mention of the x-ray issue. Therefore, we hold that the hearing officer's limitation on Bassett's expert's oral rebuttal testimony did not substantially prejudice him, and thus, no due process violation occurred. *See* § 24–4–105(7), C.R.S. (1982 Repl.Vol. 10); *Ricci v. Davis,* 627 P.2d 1111 (Colo.1981).

## II.

Bassett next argues that certain of the hearing officer's factual findings that were adopted by the Board lacked evidentiary support in the record. Our review of the record convinces us that neither of the two disputed findings of fact is clearly erroneous nor unsupported by substantial evidence. Thus, we uphold the findings. *See* § 24–4–106(7), C.R.S. (1982 Repl.Vol. 10); *Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982).

## III.

Bassett next contends that the hearing officer's grant of partial summary judgment, adopted by the Board, was improper. We disagree.

In a separate malpractice action prior to the disciplinary hearing at issue, a judgment was entered against Bassett for negligent medical treatment of a patient. One of the charges against Bassett in the present action alleged negligent malpractice against this patient. The hearing officer, based on the judgment entered in the civil action, ruled that Bassett was collaterally estopped from denying that he had committed negligent malpractice relative to the charge, and granted the Attorney General's motion for partial summary judgment.

Bassett does not dispute that the criteria for collateral estoppel were met in this case. *See People ex rel. Gallagher v. District Court,* 666 P.2d 550 (Colo.1983); *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973). Rather, he argues that, under the criteria set forth in *Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the use of offensive collateral estoppel was inappropriate. We conclude that it was appropriate.

The use of offensive collateral estoppel was approved in *Parklane,* to be decided on a case-by-case basis depending on whether its use would promote judicial economy, whether the defendant had sufficient incentive to defend in the first action, and whether any procedural guarantees are available to the defendant in the second action which were not available in the first.

Here, in the malpractice action compensatory damages of $196,000 as well as $20,000 in punitive damages were sought against Bassett. Further, the possibility of disciplinary action following an adverse judgment was distinctly foreseeable. *See* § 12–35–118(1)(s), C.R.S. (1985 Repl.Vol. 5). Thus, Bassett had every incentive to defend the civil suit fully and vigorously. *See Parklane, supra.*

Moreover, the application of collateral estoppel promoted judicial economy because the witnesses in the civil suit did not have to be recalled to testify to the same facts, and Bassett does not assert the existence of any procedural opportunities available to him at the administrative hearing which were not available at the civil jury trial. *See Parklane, supra.* Therefore, we conclude that the hearing officer did not abuse his discretion in ruling that the doctrine of collateral estoppel was applicable to Bassett, and that partial summary judgment was proper.

## IV.

Bassett next asserts that the hearing officer's findings, adopted by the Board, were insufficient as a matter of law to support the Board's conclusion that he had violated § 12–35–118(1), C.R.S. (1985 Repl. Vol. 5); dealing with gross incompetence through a course of conduct which exhibits unacceptable professional character and negligent malpractice. This assertion is without merit. The Board's findings are supported by the record, and its conclusions have a reasonable basis in law. *See Lee v. State Board of Dental Examiners, supra.* Thus, we uphold those conclusions.

## V.

Bassett's final argument is that the Board exceeded its statutory authority when it revoked his license for three years. We agree.

The Board's authority is defined and strictly controlled by the Dental Practice Law of Colorado, § 12–35–101, et seq., C.R.S. (1985 Repl.Vol. 5). *In re Maul v. State Board of Dental Examiners,* 668 P.2d 933 (Colo.1983). Section 12–35–118(1), C.R.S. (1985 Repl.Vol. 5) states, in pertinent part, that the Board "may deny the issuance or renewal of, suspend for a definite time period of not more than one year, or revoke any license provided for by this article...."

The terms "suspend" and "revoke" are not defined in the Dental Practice Law. However, by common usage, "suspension" means a temporary interruption of a privilege, while "revocation" means a permanent annulment or cancellation of a privilege. *See Webster's Third World New International Dictionary* 1944 and 2303. As defined, suspension is a lesser sanction than revocation because a suspended license remains viable, although withheld, during the suspension. *See State Board of Dental Examiners v. Savelle*, 90 Colo. 177, 8 P.2d 693 (1932); *cf.* § 12–36–118(7), C.R.S. (1985 Repl.Vol. 5).

A revoked license, on the other hand, is gone forever, and the only question becomes when, and under what circumstances, the revoked licensee may be permitted to apply for a new license. The answer to this question is governed by the authority granted to the licensing agency by statute or rule. *See, e.g.,* § 42–2–124(2), C.R.S. (1984 Repl.Vol. 17) (drivers' licenses); § 12–36–119(1)(a), C.R.S. (1985 Repl. Vol. 5) and *Puls v. People ex rel. Woodward*, 722 P.2d 424 (Colo.App.1986) (medical practice); C.R.C.P. 241.22(a) (attorney disbarment).

Here, the Dental Practice Law contains no provision restricting the time period in which a revoked licensee may apply for a new license, except that the Board may order the revoked licensee "to take such courses of training or education as may be needed to correct deficiencies found in the hearing." *See* § 12–35–118(8), C.R.S. (1985 Repl.Vol. 5). Therefore, since there is no statutory authority for the Board's action, we conclude that the Board exceeded its statutory authority when it revoked Bassett's license for a fixed period of time.

That portion of the Board's order revoking Bassett's license for three years is reversed, and the cause is remanded for reconsideration of appropriate discipline. In all other respects, the Board's order is affirmed.

ENOCH, C.J., and TURSI, J., concur.