Thaylen TODD, Plaintiff,

v.

BEAR VALLEY VILLAGE APART-MENTS, d/b/a Bear Valley Village Investments; Western Development and Investment Corporation; R.C. Avrett, Jr., individually and as President of Western Development and Investment Corporation; Bear Valley Investors, Ltd.; Hampden Investors, Ltd.; Gateway Management, Inc.; Denver Investment Company Ltd.; Roy Ettelman; Marion Harvey; Robert S. Wham; John G. Kellog; James Louis Smith; Sabet Properties; Jack Williams; LLLL Investment Company Inc.; Victoria Simpson; Janet L. Stimach; Norman D. Whalen; Lenkay Company; Larch Manor, Ltd.; Em Arnold Brown; Jack W. Montgomery; Leonard and Marlene Weiner; and John Does I–V, Defendants.

No. 98SA439.

Supreme Court of Colorado,
En Banc.

April 26, 1999.

Eric Ruderman, Denver, Colorado, Attorney for Petitioner.

George D. Browning & Associates, James A. Corman, Westminster, Colorado, Attorneys for Defendants.

Justice BENDER delivered the Opinion of the Court.

Petitioner, Thaylen Todd, is a plaintiff in a personal injury action against Respondents,

Bear Valley Village Apartments and others, owners of the property where she claims to have sustained injuries. Petitioner brought this original proceeding pursuant to C.A.R. 21 seeking relief in the nature of prohibition and mandamus. She contends that the trial court abused its discretion when, in the course of granting her motion to continue the trial, it issued orders (1) prohibiting her from presenting evidence and testimony of witnesses who had not been disclosed as of the disclosure deadline applicable to the original trial date, and (2) precluding her from obtaining prejudgment interest past the original trial date. Bear Valley argues that the trial court was authorized to issue the first order as a sanction for failure to comply with discovery deadlines. Bear Valley further argues that both orders were legitimate exercises of the trial court's discretion to place conditions on continuances. We issued a rule to show cause, and we now make the rule absolute. We hold that under C.R.C.P. 37(c), a trial court has a duty to sanction a party for failure to comply with certain discovery deadlines by precluding evidence or witnesses, *unless* the party's failure to comply is *either* substantially justified *or* harmless. Under the facts of this case, we hold that Todd's failure to comply with discovery deadlines was harmless to Bear Valley because the trial was otherwise continued due to counsel's recovery from emergency back surgery. We further hold that trial courts may not limit mandatory statutory prejudgment interest as a condition of a continuance.

## I. ORIGINAL JURISDICTION

██ This court has original jurisdiction under C.A.R. 21 to review whether a trial court abused its discretion in circumstances where a remedy on appeal would prove inadequate. *See Kourlis v. District Court*, 930 P.2d 1329, 1330 n. 1 (Colo.1997). "Issuance of pretrial orders that significantly disadvantage claimants in litigating the merits of a controversy" provides a basis for exercising jurisdiction in an original proceeding. *J.P. v. District Court*, 873 P.2d 745, 747 n. 1 (Colo. 1994). We exercise original jurisdiction here to review whether the trial court's pretrial orders were an abuse of discretion because those orders have the potential to seriously limit Todd's ability to litigate and recover for the full extent of her injuries.

## II. FACTS AND PROCEEDINGS BELOW

Todd seeks to recover for injuries she alleges she sustained in January 1994 from a slip and fall accident on property owned by Bear Valley. Todd filed a complaint against Bear Valley in January 1996. Trial was set to last for three days, beginning on July 28, 1998.

In August 1996, pursuant to C.R.C.P. 16, the parties filed a case management order establishing mutually agreed upon discovery deadlines. According to the case management order, Todd's disclosure of expert witnesses pursuant to C.R.C.P. 26(a)(2) was due on March 30, 1998 (which was 120 days before trial).

On May 21, 1998, more than six weeks after her expert witness disclosure deadline, Todd filed a motion to continue the trial. The basis for this motion was that Todd had recently received a preliminary diagnosis of a closed-head injury, which she believed to be a result of the January 1994 fall. This motion was supported by an affidavit from Todd stating that she was undergoing diagnostic procedures and treatment for this injury. Bear Valley opposed the continuance, arguing that they had received no expert disclosures indicating that Todd would present testimony concerning her treatment for a closed-head injury. On June 19, 1998, the trial court denied Todd's continuance motion.

On July 1, 1998, Todd filed a motion titled "Combined Motion to Reconsider Previous Court's Denial of Plaintiff's Previous Motion to Continue and New Motion to Continue Re: Plaintiff's Counsel's Medical Condition With Authority." In this motion, Todd moved to continue the trial on the ground that her counsel, a sole practitioner, would be significantly incapacitated for several weeks because he had undergone emergency back surgery on June 25, 1998. Todd also asserted that her new treating physician had not made the preliminary diagnosis of closed-head injury until April 22, 1998 (more than three weeks after her expert witness disclo-

sure deadline established by the case management order). Finally, Todd asserted that the first appointment she was able to schedule with a neurosurgeon for the purpose of confirming her closed-head injury diagnosis was on August 4, 1998 (one week after the trial was scheduled to begin).

Bear Valley filed a response motion asserting that, in the event of a continuance, it would be prejudiced (1) by the accrual of prejudgment interest until the new trial date; and (2) if the court were to grant Todd new deadlines for the disclosure of expert witnesses. Based on Todd's counsel's medical condition, Bear Valley agreed to the continuance of the trial provided that the court issue orders to prevent these two forms of asserted prejudice.

On July 8, 1998, the trial court granted the continuance and further ordered (1) that prejudgment interest be stayed as of the original trial date; and (2) that no evidence or testimony of witnesses undisclosed or improperly disclosed pursuant to Rule 26(a) calculated from the original trial date be allowed into evidence.

On July 29, 1998, Todd filed a motion objecting to both sanctions that the trial court imposed when it granted the continuance. On August 27, 1998, the trial court denied this motion.

## III. THE TWO CONTINUANCE MOTIONS

■ The decision to grant or deny a request for a continuance is left to the sound discretion of the trial court. *See Cherry Creek Sch. Dist. No. 5 v. Voelker,* 859 P.2d 805, 809 (Colo.1993). Continuances "shall be granted only for good cause." C.R.C.P. 121 § 1–11; *see Herrera v. Anderson,* 736 P.2d 416, 418 (Colo.App.1987).

We note that credible trial dates are a vital component of our civil justice system. Parties should be able to rely on the firmness of trial dates so that they can plan and prepare accordingly. The American Bar Association has recognized that credible trial dates also increase the quality of justice achieved by litigation:

> Unless attorneys believe that deadlines and trial dates are meaningful, timely preparation or compliance is problematic. If timely preparation helps assure a just result, the absence of certainty degrades the potential quality of the outcome.

Maureen Solomon and Douglas K. Somerlet, American Bar Association, *Caseflow Management in the Trial Court: Now and For the Future* 8 (1987). Delay resulting from continuances creates a host of problems for the parties and for the justice system as a whole:

> Delay devalues judgments, creates anxiety in litigants and uncertainty for lawyers, results in loss or deterioration of evidence, wastes court resources, needlessly increases the costs of litigation, and creates confusion and conflict in allocation of court resources.

National Conference of State Trial Judges/American Bar Association, *Standards Relating to Court Delay Reduction* 1 (1984). As a result, "[c]ontinuance of scheduled trials should be limited to circumstances in which unforeseen and exceptional circumstances require diligent attorneys to request an adjournment." Solomon and Somerlet, *supra,* at 8.

■ Here, the trial court denied Todd's first motion to continue the trial, which was based on the allegation that Todd had recently received a preliminary diagnosis of a closed-head injury which she believed to be a result of her January 1994 slip and fall accident. We conclude that it was properly within the trial court's discretion to find that Todd had then failed to demonstrate good cause for a continuance, given the limited documentation supporting Todd's motion.

■ The trial court later granted a second motion to continue the trial by Todd. In part, this motion provided greater detail concerning the closed-head injury issue and asked the court to reconsider its previous ruling on that ground for the continuance. As a separate and independent ground for continuing the trial, this motion also asserted that Todd's counsel, a sole practitioner, would be significantly incapacitated for several weeks because he had recently under-

gone emergency back surgery.[1] In granting this motion, the court issued additional orders precluding Todd from endorsing further witnesses and limiting her ability to recover prejudgment interest following the original trial date. Since it would not have been logical for the court to continue the trial on the basis of Todd's preliminary closed-head injury diagnosis while simultaneously precluding her from presenting evidence of such injury, we assume that the basis for the court's decision to grant the continuance request was counsel's medical condition. This basis clearly constitutes good cause under Rule 121, section 1–11, for granting a continuance because it is an unforeseen and exceptional circumstance.

## IV. EFFECT OF THE CONTINUANCE ON DISCOVERY

█ In cases such as this, when the trial court grants a continuance for reasons unrelated to discovery issues, postponement of the trial date does not automatically create a parallel postponement of discovery deadlines. Rather, the discovery deadlines associated with the original trial date remain in effect.

At the time the trial court continued this trial, Todd had twice alerted the court that she would be seeking to endorse further expert witnesses to testify concerning her closed-head injury. The disclosure of expert witness testimony is governed by C.R.C.P. 26(a)(2). Under this rule, the timing and sequence of expert witness disclosure shall proceed according to the provisions of the case management order, which in this case required Todd to complete expert witness disclosure by March 30, 1998. *See* C.R.C.P. 26(a)(2)(C). Thus, regardless of the continuance, endorsement of expert witnesses by Todd following this date would presumptively violate the deadline set by the case management order and thereby violate Rule 26(a)(2).

1. This motion was supported by an affidavit from counsel's doctor that explained his post-operative physical limitations.

2. The new civil procedure rules relating to discovery "establish a uniform, court-supervised procedure involving case management [that] encourages professionalism and cooperation among counsel and parties to facilitate disclo-

## V. ENFORCEMENT OF DISCOVERY DEADLINES

Discovery obligations are enforced through the sanction mechanisms of C.R.C.P. 37. Section (a) of Rule 37 provides that a party may apply to the court for an order compelling disclosure or discovery and sets guidelines for how the court should assess the costs incurred in either making or opposing the motion. Section (b) of Rule 37 provides a list of sanctions that the trial court may impose in response to a party's failure to comply with specific court orders related to discovery matters.

Section (c) of Rule 37 was added in 1995 as part of extensive revisions of our of civil procedure rules that were designed to increase the managerial role of the trial court in the discovery process and reduce discovery abuses.[2] This new section creates a sanction mechanism specifically targeted at violations of the disclosure requirements of Rules 26(a) and 26(e). Rule 37(c) provides for the exclusion of non-disclosed evidence unless the failure to disclose is *either* substantially justified *or* harmless to the opposing party:

> **(c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.** (1) A party that without substantial justification fails to disclose information required by C.R.C.P. Rules 26(a) or 26(e) shall not, unless such failure is harmless, be permitted to present any evidence not so disclosed at trial or on a motion made pursuant to C.R.C.P. 56.

C.R.C.P. 37(c). Revised Rule 37 "forms a part of a comprehensive case management system" in conjunction with the other rules relating to discovery. C.R.C.P. 37, Committee cmt.

Colorado courts have not yet been called upon to interpret the provisions of Rule

sure, discovery, pretrial, and trial procedures." C.R.C.P. 16(a). The purpose of the revised rules is to "eliminate the 'hide-the-ball' and 'hardball' tactics" that were common under the previous rules. C.R.C.P. 16, Committee cmt. "It is expected that trial judges will assertively lead the management of cases to ensure that justice is served." *Id.*

37(c). However, because this section is nearly identical to the parallel federal rule, we find treatises and case law interpreting the federal rule instructive.

■ The purpose of this new sanction is to provide parties with an incentive to make timely disclosures and to resist the temptation "to try to gain a tactical advantage at trial by exposing for the first time at that stage evidence that is favorable to their position." 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.60(1), at 37–115 (3d ed.1999). The sanction is automatic and self-executing in the sense that a motion for sanctions filed by the opposing party is not a prerequisite to the imposition of the sanction. *See id.,* § 37.60(2)(a) at 37–116; 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2289.1, at 704 (2d ed.1994).

The automatic and self-executing nature of Rule 37(c) recognizes that consistent enforcement of sanctions is an essential component of an effective case management system and is necessary not only to punish discovery violations in particular cases but also to deter discovery abuses by future litigants. *See Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir.1998), *cert. denied sub nom., Mary Hitchcock Mem'l Hosp. v. Klonoski,* —— U.S. ——, 119 S.Ct. 1334, 143 L.Ed.2d 498 (1999).

■ The burden is on the non-disclosing party to establish that its failure to disclose was either substantially justified or harmless.[3] Because it bears this burden, however, "the party who would suffer [this] sanction must be given an opportunity to demonstrate that its failure to disclose was substantially justified or harmless." *Moore's Federal Practice* § 37.60(2)(a), at 37–118. A trial court has considerable discretion with respect to these factors. *See id.*[4]

Federal courts have identified many factors to guide a trial court's evaluation of whether a failure to disclose is either substantially justified or harmless. We present a sampling here as a non-exhaustive list meant to highlight some areas of inquiry that are often relevant:

(1) the importance of the witness's testimony;

(2) the explanation of the party for its failure to comply with the required disclosure;

(3) the potential prejudice or surprise to the party against whom the testimony is offered that would arise from allowing the testimony;

(4) the availability of a continuance to cure such prejudice;

(5) the extent to which introducing such testimony would disrupt the trial; and

(6) the non-disclosing party's bad faith or willfulness.

*See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 992 (10th Cir.1999); *United States v. $9,041,598.68,* 163 F.3d 238, 252 (5th Cir.1998); *Sullivan v. Glock, Inc.,* 175 F.R.D. 497, 506–07 (D.Md. 1997).

## VI. THE EVIDENCE AND WITNESS PRECLUSION SANCTION IN TODD'S CASE

Todd argues that the standards we articulated five years ago in *J.P. v. District Court* require us to conclude that the trial court abused its discretion by precluding her from further endorsement of expert witnesses. In *J.P.,* we noted that sanctions should be commensurate with the seriousness of the disobedient party's conduct, and we held that "[i]ssue or witness preclusion is a severe sanction and should only be invoked when there has been serious misconduct by the party seeking modification of the pretrial order by the endorsement of a substitute witness." *J.P.,* 873 P.2d at 751. Todd argues that the trial court's sanction must be vacated because she did not commit any seri-

---

3. *See Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.,* 100 F.3d 1353, 1363 (7th Cir.1996); *Asia Strategic Inv. Alliances Ltd. v. General Elec. Capital Servs., Inc.,* No. 95–2479–GTV, 1997 WL 122568 at *3–4 (D.Kan. March 11, 1997); *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan. 1995).

4. *See also Mid–America,* 100 F.3d at 1363; *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir.1995).

ous misconduct that would warrant such a sanction.

■ Although we ultimately reach the conclusion that the trial court erred when it issued the evidence and witness preclusion sanction, we do so based on an application of the standards of Rule 37(c) rather than *J.P.* Because *J.P.* was decided before the revision of our discovery rules, including the amendment to C.R.C.P. 37 containing the automatic sanction provision of section (c), we hold that it does not control our analysis of Todd's case. *See Klonoski,* 156 F.3d at 269 n. 5 (stating that "cases analyzing the sanction issue under the pre-amendment rubric retain only limited authority in this post-amendment era"). In effect, whereas *J.P.* held that a trial court may only impose a sanction of evidence or witness preclusion when the party being sanctioned has committed serious misconduct, section (c) of Rule 37 requires that trial courts sanction all failures to disclose under Rules 26(a) and 26(e) with evidence or witness preclusion unless the failure to disclose is either substantially justified or harmless. Thus, while serious misconduct was a prerequisite to the imposition of the sanction of evidence or witness preclusion under *J.P.*, it is now one of several factors to be considered under the standards of Rule 37(c). We recognize that this is the first time this court has interpreted Rule 37(c) following the 1995 revisions; thus, it is understandable that in this case the trial court did not apply the standards of that rule.

■ Under Rule 37(c), even where a violation lacks substantial justification, the sanction of evidence or witness preclusion is inappropriate if the lateness of the disclosure is harmless to the other party. In evaluating whether a failure to disclose evidence is harmless under Rule 37(c), the inquiry is not whether the new evidence is potentially harmful to the opposing side's case. Instead, the question is whether the failure to disclose the evidence in a timely fashion will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence. *See Mid–America,* 100 F.3d at 1363; *Sullivan,* 175 F.R.D. at 506–07; *Nguyen,* 162 F.R.D. at 680–82.

■ We anticipate that cases may arise in which a party fails to make the expert witness disclosures required by Rule 26, lacks substantial justification for such failure, and yet seeks to be allowed to present such witnesses at trial. When these circumstances arise close to the trial date, it is likely that the failure to disclose will cause prejudice to the opposing party. As a practical matter, the trial court may then be faced with a choice between continuing the trial or sanctioning the non-disclosing party by precluding the witness. We reaffirm the principle expressed in *J.P.* that a party should not be denied a day in court because of an inflexible application of a procedural rule. *See J.P.,* 873 P.2d at 751–52. However, we are mindful that *J.P.* can be read to suggest that under these circumstances, a trial court should continue the trial for the sole purpose of mitigating prejudice to the party entitled to the disclosure. *See J.P.,* 873 P.2d at 751. In our view, the 1995 revisions of our rules of civil procedure represent a shift away from this reading of *J.P.*

■ The basic purpose of our rules of civil procedure is to provide a "just, speedy, and inexpensive determination" of civil cases. C.R.C.P. 1(a). The 1995 revisions emphasize active trial court management of civil cases in order to reduce abuses of the system such as dilatory discovery tactics and inefficient trial preparation. The determination of whether to grant a continuance based on discovery issues is left to the sound discretion of the trial court in applying the good cause standard of Rule 121, section 1–11. *See* section III, *supra.* On one hand, the trial court must strive to afford all parties their day in court and an opportunity to present all relevant evidence at trial. *See J.P.,* 873 P.2d at 751. On the other hand, the trial court must be careful not to reward a party who fails to make timely disclosures by granting a continuance, since this practice invites abuse. *See Sullivan,* 175 F.R.D. at 508. While not required, we note that the better practice is for the trial court to articulate the reasons underlying its conclusion that good cause for a continuance was either demonstrated or not.

Applying Rule 37(c) to Todd's case, we do not address the question of whether Todd's violation of the expert witness disclosure deadline associated with the original trial date was substantially justified, because we conclude that Todd's failure to comply with this deadline is harmless to Bear Valley under the facts of this case. This trial was continued for reasons independent of discovery matters. This continuance has given Bear Valley more time to prepare its case in defense of Todd's claims. Therefore, Bear Valley would not be prejudiced by late disclosure of evidence relating to Todd's closed-head injury. Under these circumstances, we hold that the trial court erred when it issued the order precluding Todd from further endorsement of expert witnesses because Todd's failure to meet the expert witness disclosure deadline for the original trial date is harmless to Bear Valley.

## VII. CONDITIONS ON CONTINUANCES

Bear Valley argues that the order precluding Todd from further endorsement of witnesses and the order limiting Todd's prejudgment interest were valid exercises of the trial court's authority to place conditions on continuances. We are not persuaded by this argument for two reasons: (1) because these orders were not true conditions under the facts of this case; and (2) because of the mandatory nature of statutory prejudgment interest.

## A. CONDITIONS

It is true that in certain circumstances, Colorado courts have found that a trial court has the discretionary authority to impose conditions as a prerequisite to granting a continuance. *See Ford v. Simmons*, 52 Colo. 249, 256, 121 P. 167, 170–71 (1912);

*Gray v. State Farm Mut. Auto. Ins. Co.*, 826 P.2d 420, 420–21 (Colo.App.1992). However, the rationale for why courts have found such conditions to be binding on the moving party is that the moving party is deemed to have implicitly agreed to the conditions imposed:

> [W]here the defendants' motion for continuance is granted upon terms, where, as in this case, it was optional with them to accept or not upon the terms imposed, their acceptance of the continuance is an acceptance of the conditions upon which it was granted.

*Ford*, 52 Colo. at 259, 121 P. at 171; *see also Gray*, 826 P.2d at 421. These circumstances are not present here. Todd was not offered a choice of accepting a continuance according to certain conditions. Rather, the trial court issued a written order granting the continuance that contained the two additional orders at issue here, and Todd then filed a written motion objecting to these additional orders. Therefore, it cannot be said that Todd implicitly consented to the conditions imposed by the trial court.[5]

## B. PREJUDGMENT INTEREST

Furthermore, as a matter of law, we disagree with Bear Valley's contention that the trial court's authority to place conditions on continuances encompasses the discretion to limit a personal injury plaintiff's entitlement to prejudgment interest.[6]

By statute, successful personal injury plaintiffs in Colorado are entitled to receive prejudgment interest on their damage awards, calculated from the date of the injury. *See* § 13–21–101, 5 C.R.S. (1998). "When such interest is so claimed, *it is the duty of the court* in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury, or found by the court, interest on

5. Moreover, even had Todd been give the opportunity to consent to a continuance that was conditioned on the addition of these two orders, the unforeseen circumstances of her counsel's emergency back surgery in this case may have rendered such implicit consent illusory.

6. We recognize that it is common practice for a plaintiff to waive his or her right to prejudgment interest in the context of an agreement between both parties to seek a continuance from the court. Our opinion today merely addresses the discretion of the court to place conditions on continuances; it does not limit this practice of voluntary waiver. We reiterate, however, that even where both parties agree to a continuance, the ultimate decision of whether to continue the trial is left to the discretion of the trial court. *See* section III, *supra.*

such amount." § 13–21–101(1) (emphasis added). We have held that "such prejudgment interest is an element of compensatory damages in actions for personal injuries, awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor." *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 19 (Colo.1990). We have also concluded that the trial court's act of awarding prejudgment interest is "a ministerial act that is mandatory and does not require the exercise of judgment or discretion." *Crosby v. Kroeger*, 138 Colo. 55, 64–65, 330 P.2d 958, 963 (1958). Similarly, the Colorado Court of Appeals has held that "[s]ection 13–21–101 mandates, without any discretion being given to the trial court, that prejudgment interest be calculated from the date the action accrued until the date judgment was entered." *Mladjan v. Public Serv. Co. of Colo.*, 797 P.2d 1299, 1303 (Colo.App.1990); *see also Brooks v. Jackson*, 813 P.2d 847, 849 (Colo. App.1991). Thus, we hold that the trial court had no discretion, as a condition of a continuance,[7] to limit the amount of mandatory, statutory prejudgment interest that may ultimately be awarded to Todd if she prevails at trial.[8]

## VIII. CONCLUSION

■ In conclusion, we hold that trial courts may not impose the sanction of evidence or witness preclusion when a party's failure to comply with discovery obligations under Rules 26(a) and 26(e) is *either* substantially justified *or* harmless. In this case, we hold that as a result of the continuance of this trial due to counsel's emergency back surgery, Todd's failure to comply with the original deadline for expert witness disclosure is harmless to Bear Valley. We further hold that the additional rulings that the trial court issued when it granted Todd's continuance motion were not justified by the trial court's discretion to place conditions on continuances. Therefore, we make the rule to show cause absolute.

Justice MARTINEZ concurs, and Justice SCOTT joins in the concurrence.

Justice MARTINEZ concurring:

Pursuant to C.R.C.P. 37(c), a trial court may not sanction a party for failure to comply with certain discovery deadlines by precluding evidence or witnesses if the party's failure to comply is harmless. Because Todd's failure to comply with the relevant discovery deadline in this case was harmless, the majority holds that the trial court erred when it precluded Todd from further endorsement of expert witnesses. *See* maj. op. at 980. The majority also holds that a trial court may not limit mandatory statutory prejudgment interest as a condition of a continuance. *See* maj. op. at 975. As to each of these conclusions, I concur in the majority's opinion and judgment.

I write separately to emphasize that the majority's discussion of the continued vitality of our reasoning in *J.P. v. District Court*, 873

7. Our holding here is limited to an analysis of the court's authority to impose conditions on a continuance. In a different context, where a party refuses to comply with a direct court order in discovery matters, we recognize that a trial court has the discretion to sanction a party by dismissing an entire case or by entering a default judgment against that party. *See* C.R.C.P. 37(b)(2)(C). This authority would logically seem to encompass the authority to limit prejudgment interest. However, we need not decide this issue today.

8. Bear Valley argues that because the continuance was at Todd's request, prejudgment interest should be stayed as of the original trial date in order to avoid prejudice to the defendants. We are not persuaded. This argument incorrectly implies that the accrual of prejudgment interest between the original trial date and a final judgment in this case will make this case ultimately more costly to the defendants than it would be if the same judgment were entered against them following trial on the original trial date. However, the General Assembly instituted statutory prejudgment interest as a way of accounting for the time value of money. In the event that Todd prevails, it is true that Bear Valley will ultimately pay a greater amount of prejudgment interest as a result of the continuance in this case. However, this additional amount merely compensates Todd for the fact that during those extra months, Todd has not had the benefit of the use of the compensatory damages to which she might be found to be entitled, while Bear Valley has enjoyed the use of that amount. Thus, we perceive no prejudice to defendants from allowing Todd, if she succeeds at trial, to collect prejudgment interest for the period following the original trial date.

P.2d 745 (Colo.1994), is unnecessary to the resolution of this case. *See* maj. op. at 978–979. Accordingly, I do not join that portion of the majority's opinion. Furthermore, I write to express my view of the limited reach of the majority's conclusion that a continuance of the trial date in this case did not automatically extend the deadline to make the required discovery disclosures. *See id.* at 977.

## I.

Because the facts of this case are thoroughly presented by the majority, *see id.* at 975–976, I will only briefly recount a few relevant facts here. According to the case management order, Todd's disclosure of expert witnesses pursuant to C.R.C.P 26(a)(2) was due on March 30, 1998. On May 21, 1998, Todd moved to continue the trial because she had recently received a preliminary diagnosis of a closed-head injury and wished to receive further information about this injury for use at trial. The trial court denied this motion. On July 1, 1998, Todd filed a new motion to continue the trial based on two considerations: (1) her counsel would be unavailable for trial due to his emergency surgery, and (2) she had not received her closed-head injury diagnosis until after the discovery disclosure deadline and she could not obtain confirmation of her injury until after the original trial date. The trial court granted the continuance, and the court further ordered that prejudgment interest be stayed as of the original trial date and that no evidence or testimony of witnesses undisclosed as of the original discovery deadline be allowed into evidence.

## II.

The disclosure of expert witness testimony is governed by C.R.C.P. 26(a)(2). This rule provides that "[t]hese disclosures shall be made at the times and in the sequence established by the Case Management Order, pursuant to C.R.C.P. 16(b)." C.R.C.P. 26(a)(2)(C). The sanctions for failure to make disclosures or cooperate with discovery are addressed by C.R.C.P. 37. Section (c) of Rule 37, added in 1995, provides:

A party that without substantial justification fails to disclose information required by C.R.C.P. Rules 26(a) or 26(e) shall not, *unless such failure is harmless,* be permitted to present any evidence not so disclosed at trial or on a motion made pursuant to C.R.C.P. 56.

(Emphasis added.) Thus, even where a party fails to comply with the disclosure deadlines of the case management order, Rule 37(c) does not prevent the party from presenting the improperly disclosed evidence at trial if the failure to comply is harmless.

In this case, Todd sought to endorse expert witnesses after March 30, 1998, in violation of the deadline imposed by the case management order. C.R.C.P. 37(c) might prevent Todd from presenting the witnesses' testimony at trial unless the failure is harmless. As the majority properly concludes, however, because the trial was continued for reasons unrelated to the failure to make the required witness disclosures, Todd's failure to make these disclosures was harmless to Bear Valley. *See* maj. op. at 980. Consequently, under the plain language of C.R.C.P. 37(c), the trial court erred in precluding Todd from endorsing the new expert witnesses for use at trial. To this extent, I join the majority's analysis and conclusion.

In my view, the above analysis is sufficient to resolve the question whether Todd should be allowed to endorse the expert witnesses. Therefore, the majority's additional discussion of the applicability and vitality of our reasoning in *J.P. v. District Court* is unwarranted. *See* maj. op. at 978–979.

In *J.P.*, we explained that the rules of civil procedure must be liberally construed to afford all parties their day in court and guarantee that all relevant evidence is available for presentation at trial. *See* 873 P.2d at 750. We liberally construed C.R.C.P. 16 to determine whether the extreme sanction of witness preclusion was appropriate in that case. *See id.* at 750–57. We found that this sanction was improper under the facts of that case. *See id.* at 757.

Because C.R.C.P. 37(c) was not in effect at that time, we did not apply its provisions to the facts of *J.P.* As explained above, a straightforward application of C.R.C.P. 37(c)

to this case compels the conclusion that the trial court's preclusion of Todd's expert witness was unwarranted. The majority goes beyond this application to discuss, and ultimately to find no longer viable, *J.P.*'s liberal construction of the rules of civil procedure regarding witness preclusion. *See* maj. op. at 978–979. Because this discussion is not necessary to the resolution of this case, I would not engage in it until such time as it is an issue before us. Accordingly, I do not join that portion of the majority's opinion.

### III.

The majority declares, *"In cases such as this,* when the trial court grants a continuance for reasons unrelated to discovery issues, postponement of the trial date does not automatically create a parallel postponement of discovery deadlines. Rather, the discovery deadlines associated with the original trial date remain in effect." *Id.* at 977 (emphasis added). I agree.

I write separately, however, to express my view that "cases such as this" are those in which the case management order specifies a fixed discovery deadline (here, March 30, 1998). Because the discovery deadline is not contingent upon the trial date, postponement of the trial date does not automatically extend the discovery deadline.

### IV.

Although I believe a portion of the majority's opinion to be unnecessary to resolve this case, I concur in the majority's decision to make the rule to show cause absolute.

Justice SCOTT joins in this concurrence.