23CA2018 Peo in Interest of DM-KB 08-29-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA2018 City and County of Denver Juvenile Court No. 23JV30160 Honorable Pax Moultrie, Judge The People of the State of Colorado, Appellee, In the Interest of D.M-K.B., a Child, and Concerning T.L.T., a/k/a T.L.S.T., Appellant. JUDGMENT AFFIRMED Division V Opinion by JUDGE RICHMAN* Brown and Graham*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 29, 2024 Kerry Tipper, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee Josi McCauley, Guardian ad Litem Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024
1 ¶ 1 T.L.T. a/k/a T.L.S.T. (mother) appeals the judgment adjudicating D.M-K.B. (the child) dependent and neglected. We affirm. I. Background ¶ 2 In March 2023, the one-month-old child was transported to the hospital because he was having trouble breathing. At the hospital, doctors discovered that he had numerous fractures in his ribs, legs, and feet. Because the doctors suspected child abuse, they contacted the Denver Department of Human Services, and after an investigation, the Department filed a petition in dependency and neglect. In addition to these child abuse allegations, the Department further alleged that mother’s older child had experienced similar abuse a few years earlier. Specifically, the Department stated that the older child was admitted to the hospital at three weeks old and had sixty-seven fractures, which resulted in the filing of a dependency and neglect case that ended with an allocation of parental responsibilities to her paternal grandmother. ¶ 3 Mother initially admitted that the child was in an injurious environment, but after the guardian ad litem (GAL) moved the court for a finding that no appropriate treatment plan could be devised, 
2 mother asked to withdraw her admission, which the juvenile court granted. Before a trial could commence, the Department moved for an adjudication by summary judgment. Mother responded to the motion and submitted an affidavit from her retained expert, who opined, among other things, that the child had a condition that caused bone fragility and therefore his injuries were likely the result of normal parenting, not child abuse. After reviewing the pleadings, the court denied the motion for summary judgment. The matter then proceeded to a four-day jury trial, at which the Department presented expert testimony that the child’s injuries were likely the result of child abuse. Mother presented testimony from her retained expert, who maintained that the child’s injuries were not caused by child abuse and that the child’s doctors had failed to properly consider the child’s bone fragility in reaching their conclusions. ¶ 4 After hearing the evidence, the jury returned a verdict in favor of the Department, finding that it had established four of the adjudication grounds in section 19-3-102, C.R.S. 2024: 
3 • mother had subjected the child to mistreatment or abuse or allowed another to mistreat or abuse the child, § 19-3-
102(1)(a); • the child lacked proper parental care through the actions or omissions of mother, § 19-3-102(1)(b); • the child’s environment was injurious to his welfare, § 19-3-
102(1)(c); and • mother subjected her older child to an identifiable pattern of habitual abuse that posed a current threat to the child. § 19-3-102(2). Based on the jury’s verdict, the juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for mother over the GAL’s objection. II. Discovery Violation Sanction ¶ 5 Mother asserts that the juvenile court erred by placing “excessive and onerous restrictions” on her expert witness’s testimony as a sanction for the untimely disclosure of an expert report and therefore violated her due process right to a fundamentally fair proceeding. We disagree. 
4 A. Applicable Law and Standard of Review ¶ 6 At the time of the adjudicatory hearing in this case, the Colorado Rules of Juvenile Procedure did not include any provisions related to the disclosure of expert reports or what sanctions may be ordered for a party’s failure to timely disclose an expert report. See C.R.J.P. 4.6(g)(3), (k) (effective July 1, 2024). Generally, if the juvenile rules do not specifically address an issue, then courts may apply the Colorado Rules of Civil Procedure. See C.R.J.P. 1. But C.R.C.P. 26(a)(2), which requires parties to disclose written reports from a retained expert, does not apply in dependency and neglect cases unless “ordered by the court or stipulated by the parties.” C.R.C.P. 26(a); People in Interest of K.T., 129 P.3d 1080, 1082 (Colo. App. 2005). ¶ 7 In this case, we see nothing in the record, showing that the juvenile court ordered compliance with C.R.C.P. 26, but it did order mother to make an expert disclosure, on terms similar to those required by C.R.C.P. 26. To the extent the juvenile court sanctioned mother for not making that disclosure timely, we think the analysis of that order can be made consistent with C.R.C.P. 37(c)(1) and cases interpreting the rule, which allows a court to 
5 preclude undisclosed evidence unless the failure to disclose did not and will not cause significant harm or precluding the evidence would be disproportionate to the harm suffered. ¶ 8 In deciding whether to preclude evidence, the juvenile court must consider whether the lateness of the disclosure prejudiced the opposing party “by denying that party an adequate opportunity to defend against the evidence.” Todd v. Bear Valley Vill. Apartments, 980 P.2d 973, 979 (Colo. 1999). Our supreme court has provided a nonexhaustive list of factors for courts to consider when determining the appropriate sanction, including, as relevant here, the importance of the witness’s testimony, the potential prejudice or surprise to the party against whom the evidence is offered that would arise from allowing the testimony, and the availability of a continuance to cure such prejudice. Id. at 978. ¶ 9 We review the juvenile court’s resolution of discovery issues for an abuse of discretion. People v. Bueno, 2013 COA 151, ¶ 10, aff’d, 2018 CO 4; People in Interest of S.L., 2017 COA 160, ¶ 68 (admission of expert testimony); see also Todd, 980 P.2d at 978 (noting that the “court has considerable discretion” in applying the factors described above). An abuse of discretion occurs only when 
6 the court’s decision is manifestly arbitrary, unreasonable, or unfair, or when it is based on an erroneous view of the law. People in Interest of A.C.E-D., 2018 COA 157, ¶ 31. ¶ 10 In dependency and neglect proceedings, due process requires the state to provide fundamentally fair procedures. See People in Interest of C.J., 2017 COA 157, ¶ 27. At the adjudicatory stage, due process requires, among other things, that a parent be allowed “the opportunity to present evidence in his or her favor.” People in Interest of J.G., 2016 CO 39, ¶ 25. We review due process claims de novo. People in Interest of R.J.B., 2021 COA 4, ¶ 26. B. Analysis ¶ 11 About two weeks before the initial trial setting, mother requested a continuance, and her counsel assured the court that, if it continued the matter for a few weeks, she could produce the expert’s report. At a pretrial conference a few weeks later, the court ordered mother to produce her expert report no later than August 4, 2023, which was eleven days before the trial. When the parties appeared for trial, mother had yet to produce the expert’s report, and the Department and GAL asked the court to exclude the expert’s testimony. Mother objected to the request, arguing that, if 
7 the court prevented her from presenting any testimony from her expert, she would “be left without her primary defense,” which would violate her due process right to a fundamentally fair proceeding. ¶ 12 Mother’s counsel explained that she had only received the expert’s report the previous night and that she would make it available to the Department and GAL, but she recognized that she would have to ask for a “continuance so that all parties [could] be ready to proceed on the same information.” Yet, counsel did not request a continuance; she instead agreed to limit the expert witness’s testimony to information already disclosed in the affidavit submitted with mother’s response to the motion for summary judgment. ¶ 13 Ultimately, the juvenile court denied the Department and GAL’s request to completely exclude the expert’s testimony. The court agreed with mother’s proposed solution and ruled that the expert could testify about anything included in the affidavit, but he could not present any new information in the undisclosed report. For example, the court excluded several slides from the expert’s slideshow showing images of the child’s skull because the expert’s 
8 affidavit did not discuss the child’s skull or note that he had reviewed the images during his evaluation. On appeal, mother asserts that the court’s sanction limiting her expert’s testimony was “excessive relative to the discovery violation” because the expert’s “affidavit placed the opposing parties on notice concerning the major points of [his] expected testimony.” But, as described above, mother asked the court to implement the exact limitation that she now challenges. See Hansen v. State Farm Mut. Auto Ins. Co., 957 P.2d 1380, 1384 (Colo. 1998) (appellate courts do not review “errors alleged by a party who is responsible for the claimed error”). Therefore, she waived any challenge to the limitation on appeal. ¶ 14 In any event, we are not convinced that the court implemented a disproportionate measure. As noted above, mother provides us with only one concrete example of evidence that was excluded because it was not covered in the affidavit. It is undisputed that the Department and GAL did not have any notice that the expert would attempt to show images of the child’s skull to explain that the child’s bones were not “properly mineralized” and that the child may have suffered from rickets. The Department’s experts therefore did not have the opportunity to address these images and provide 
9 alternative explanations. See Todd, 980 P.2d at 979. And recall that mother declined the opportunity for a continuance to allow the Department’s experts to review these materials. Id. ¶ 15 What’s more, although the court precluded this specific testimony, it still allowed the expert to “talk generally about the information that he ha[d] reviewed to come to the conclusion about mineralization of [the child’s] bones.” For example, the expert was allowed to opine that the child’s bones were not properly mineralized by showing images of the child’s ribs, legs, and feet. He also testified extensively about rickets and opined that the images of the child’s bones were indicative of a child with healing rickets. And mother argued in closing that the evidence showed that the child’s bones were not properly mineralized and that he had “clear signs” of rickets. As a result, mother had ample opportunity to present her defense that the child’s injuries resulted, not from child abuse, but from his undiagnosed bone fragility. We therefore reject mother’s assertion that the court’s ruling improperly limited her ability to present a defense and therefore discern no due process violation. See Bassett v. State Bd. of Dental Exam’rs, 727 P.2d 864, 
10 865 (Colo. App. 1986) (precluding expert testimony is not denial of due process when it does not substantially prejudice party). III. Other Contentions ¶ 16 Mother also asserts that we should reverse the judgment for two additional reasons. ¶ 17 First, mother contends that the evidence was insufficient to adjudicate the child dependent and neglected under section 19-3-
102(2). Section 19-3-102(2)(b) requires, among other things, that the Department establish that the parent was “the respondent in another proceeding . . . in which a court has adjudicated another child to be neglected or dependent based upon allegations of . . . physical abuse.” Mother asserts that, although she was a respondent in another proceeding and her older child was adjudicated dependent and neglected, the adjudication was not based on allegations of physical abuse because she made a no-fault admission. ¶ 18 Second, mother argues that section 19-3-102(1)(c) is constitutionally vague under the circumstances of this case because the statute invites a jury to adjudicate a child dependent and neglected whenever harm befalls a child for any reason. See 
11 People in Interest of L.C., 2017 COA 82, ¶ 7 (stating that a statute is vague when persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application). ¶ 19 We need not reach the merits of either argument because (1) section 19-3-102 “requires proof of only one condition for an adjudication,” see People in Interest of S.M-L., 2016 COA 173, ¶ 29, aff’d on other grounds sub nom. People in Interest of R.S. v. G.S., 2018 CO 31; (2) here the jury also found that the child was dependent and neglected under subsections (1)(a) and (1)(b); and (3) mother does not challenge the jury’s findings under subsections (1)(a) or (1)(b). In other words, even if mother succeeded on her appeal as to subsections (1)(c) and (2), the judgment would nevertheless stand because the child would still be dependent and neglected under subsections (1)(a) and (1)(b). IV. Disposition ¶ 20 The judgment is affirmed. JUDGE BROWN and JUDGE GRAHAM concur.