2014 COA 164

**Vivian KALLAS, Plaintiff–Appellant,**

v.

**Louis A. SPINOZZI, O.D.,
Defendant–Appellee.**

**Court of Appeals No. 13CA1015**

Colorado Court of Appeals,
Div. I.

Announced December 4, 2014

Lego Law Firm, Robert T. Lego, Englewood, Colorado, for Plaintiff–Appellant.

Hunter & Associates, Karen R. Wasson, Denver, Colorado, for Defendant–Appellee.

Opinion by CHIEF JUDGE LOEB

¶ 1 Plaintiff, Vivian Kallas, appeals from the trial court's judgment dismissing with prejudice her medical malpractice action against defendant, Louis A. Spinozzi, O.D. We affirm.

## I.  Background and Procedural History

¶ 2 Because the issues in this appeal relate directly to the very long and complex pretrial history in this case, we begin by summarizing in some detail that procedural history and background.

¶ 3 On September 24, 2010, Kallas filed this action against Spinozzi, a licensed optometrist. Kallas asserted claims of professional negligence, battery, and lack of informed consent arising from a procedure Spinozzi performed on her right eye.

¶ 4 A jury trial was originally set for July 24, 2012. Shortly before trial, Kallas moved for a continuance because her medical expert witness withdrew from the case. The court granted the motion and reset the trial for April 15, 2013.

¶ 5 Kallas retained a new expert, Dr. Wirostko, to testify on the standard of care and other medical issues. The expert issued reports in August and November of 2012. The parties scheduled Dr. Wirostko's deposition for December 10, 2012, in Utah, where the expert lived. However, on November 28, Kallas's counsel, who describes himself as a sole practitioner, fell in his home and was hospitalized with serious injuries. As a result, he could not travel to Utah to defend the expert deposition as scheduled. Spinozzi's counsel contacted Kallas's counsel throughout the month of December to reschedule the deposition but was unable to reach him. On January 8, 2013, Spinozzi moved to compel the expert deposition.

¶ 6 The trial court, on its own motion, held a telephone status hearing on January 31 to address the situation and determine whether the parties would be ready for trial on April 15. Kallas's counsel informed the court that "it [was] impractical for [him] to practice law at this time" because he had been in hospitals and rehabilitation centers since the accident. The court asked him whether he had considered bringing in another lawyer to try the case, noting that the case was already two and a half years old. Kallas's counsel responded that he did not want to bring in other counsel. The court stated:

> [I]n no way, [counsel], am I downplaying your physical illness.... But I, I also

have an, an active case here that has been set for trial 3 times that needs resolution.... I'm not hearing anything from you that suggests that you are going to be in any condition in the near term to handle this case, and ... I'm not hearing anything from you that tells me with any reasonable degree of certainty or even probability when you will be, be able to begin actively moving this case.... [I]f you are not in a position to be able to handle this case, then you need to make other arrangements.

¶ 7 Kallas's counsel reiterated that he would not bring in other counsel, speculating that he would be ready to defend the deposition in March and try the case in April. He specifically stated that he did not want a continuance.

¶ 8 The court then addressed the expert deposition. The court ordered the parties to conduct the deposition during the first week of March by telephone so that Kallas's counsel would not have to travel to Utah. Kallas's counsel refused Spinozzi's offer to contact the expert directly about scheduling, assuring the court that he or other lawyers with whom he was associated would handle it. The court directed Kallas's counsel to have someone contact Spinozzi's counsel within forty-eight hours to schedule the deposition.

¶ 9 Kallas's counsel did not contact Spinozzi's counsel within that timeframe. Subsequently, Kallas's counsel e-mailed Spinozzi's counsel to propose that the deposition take place on March 4 at 2:00 p.m. Spinozzi's counsel responded, agreeing to the March 4 date and requesting the expert's telephone number and office location so that she could make final arrangements for the deposition. Although Kallas's counsel emailed Spinozzi's counsel several more times before March 4, he never provided the requested information. Spinozzi's counsel was thus unable to notice the deposition, set up the conference call, or arrange for a court reporter to be present at the expert's office.

¶ 10 Spinozzi's counsel also tried unsuccessfully to obtain the file of documents that the expert reviewed in preparing her report. She prepared a subpoena duces tecum for the documents and retained a process server who made eleven unsuccessful attempts to

serve it on the expert. Spinozzi then moved to compel production of the expert's file. The court initially denied it for failure to confer, but after Spinozzi amended the motion to include conferral attempts, the court granted the motion on February 28. The court ordered Kallas to produce the expert file by the afternoon of Friday, March 1—one business day before the deposition was scheduled to take place on Monday, March 4. Neither Kallas nor her counsel produced the file as ordered.

¶ 11 By the evening of Friday, March 1, Spinozzi still did not have the expert's file or the logistical information necessary to move forward with the Monday deposition. Spinozzi moved to strike Kallas's expert. The court initially granted the motion to strike the expert in a written order on March 25. At a scheduling hearing on March 29 at which Kallas's counsel failed to appear, the trial court reaffirmed its March 25 order granting Spinozzi's motion to strike the expert.

¶ 12 At the March 29 hearing, Spinozzi moved to dismiss the action, arguing that Kallas could not prove her claims without an expert witness. The trial court delayed ruling on the motion to give Kallas an opportunity to respond.

¶ 13 During this time, Kallas's counsel continued to face serious health problems. He was briefly discharged from the rehabilitation facility on March 2, but he fell again on March 3 and was readmitted to the hospital. On April 1, he moved to continue the April 15 trial date because of his ongoing health issues and requested an expedited hearing on his motion. The court granted the request for an expedited hearing, which was set for April 11. Kallas's counsel did not appear at the hearing in person or by telephone. At the April 11 hearing, the court denied Kallas's motion for a continuance in a written order and stated that the case would go to trial as scheduled on April 15. On April 12, Kallas's counsel responded to Spinozzi's motion to dismiss, reiterating the argument that the case should be continued.

¶ 14 On April 15, the first day of trial, Spinozzi and his counsel appeared and an-

nounced they were ready to proceed to trial. Kallas appeared without her counsel. Another attorney appeared to make a statement on behalf of Kallas's counsel regarding his medical condition, but did not enter an appearance for Kallas in the case. The attorney informed the court that Kallas's counsel remained in a rehabilitation center and was unable to try the case at that time. Kallas herself stated that she was not prepared to go to trial and requested a continuance. The court then granted Spinozzi's motion to dismiss the case with prejudice for failure to prosecute. This appeal followed.

## II. Discussion

¶ 15 On appeal, Kallas contends that the trial court abused its discretion in striking her expert, denying her motion for a continuance, and dismissing her claims on the first day of trial. We reject each of these contentions and, therefore, affirm the judgment.

¶ 16 In reaching this conclusion, we acknowledge that striking Kallas's expert was a severe sanction that ultimately resulted in dismissal of the case. We also recognize and are sensitive to the fact that Kallas's counsel faced serious health problems when this sanction was imposed. Nevertheless, based on our review of the record and the totality of the circumstances (including the thorough and detailed findings by the trial court throughout this case), we conclude that this is one of those rare cases where the trial court did not abuse its discretion in imposing a litigation-ending sanction. We therefore conclude the court did not err in entering the orders challenged on appeal and affirm the judgment dismissing this case.

### A. Motion to Strike Expert

¶ 17 We first address and reject Kallas's contention that the trial court abused its discretion by granting Spinozzi's motion to strike Kallas's expert.

¶ 18 Trial courts have broad discretion to manage the discovery process, including the ability to impose sanctions. *Warden v. Exempla, Inc.*, 2012 CO 74, ¶ 32, 291 P.3d 30. C.R.C.P. 37 governs sanctions for a party's failure to cooperate in discovery. The trial court may impose a variety of sanctions under that rule, including "orders requiring payment of attorneys' fees and costs, orders staying proceedings until discovery orders are complied with, orders prohibiting a disobedient party from introducing designated matters into evidence, orders striking pleadings, and orders entering default judgment." *Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo. 2009).

¶ 19 "Whether to impose sanctions and the nature of the sanctions to be imposed are matters for the sound exercise of the trial court's discretion, and the courts are given flexibility in choosing the appropriate sanction." *Nagy v. Dist. Court*, 762 P.2d 158, 160 (Colo. 1988). A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Pinkstaff*, 211 P.3d at 702.

¶ 20 However, the trial court's broad discretion is not without limits. *Id.* at 703. The supreme court has outlined the following guidelines for determining which sanction is appropriate:

> Generally, sanctions under C.R.C.P. 37 "should be applied in a manner that effectuates proportionality between the sanction imposed and the culpability of the disobedient party." If Rule 37 sanctions are warranted in a case, "the trial judge must craft an appropriate sanction by considering the complete range of sanctions and weighing the sanction in light of the full record in the case." When discovery abuses are alleged, courts should carefully examine whether there is any basis for the allegation and, if sanctions are warranted, impose the least severe sanction that will ensure there is full compliance with a court's discovery orders and is commensurate with the prejudice caused to the opposing party.

*Id.* at 702 (citations omitted).

¶ 21 The supreme court has generally disfavored litigation-ending sanctions, emphasizing that "litigation should be determined on the merits and not on formulistic application of [procedural] rules." *Id.* at 703. The supreme court has not altogether foreclosed the possibility of and need for litigation-end-

ing sanctions, but has cautioned that such harsh sanctions should be imposed "only in extreme circumstances." *Nagy*, 762 P.2d at 161; *see also Pinkstaff*, 211 P.3d at 703; *Cornelius v. River Ridge Ranch Landowners Ass'n*, 202 P.3d 564, 571 (Colo. 2009); *Prefer v. PharmNetRx, LLC*, 18 P.3d 844, 850 (Colo. App. 2000) (Dismissal may be imposed as a sanction "for willful or deliberate disobedience of discovery rules, flagrant disregard of a party's discovery obligations, or a substantial deviation from reasonable care in complying with those obligations.").

¶ 22 For the reasons explained in detail below, we conclude that this is a case of "extreme circumstances" that justified the court's decision to strike Kallas's expert.

¶ 23 We begin by noting that the trial court did not immediately end litigation by imposing a sanction such as a default judgment. But because expert testimony was essential to prove Kallas's claims, the trial court's decision to strike Kallas's expert effectively brought about the same result.

¶ 24 Applying the legal framework articulated by the supreme court in *Pinkstaff* to the facts of this case, we examine whether the trial court abused its discretion in (1) finding that Kallas violated her discovery obligations; (2) concluding that sanctions were warranted; and (3) imposing the harsh sanction of striking Kallas's expert. We perceive no abuse of discretion in any of those rulings.

¶ 25 In its March 25 order, the trial court expressly found that Kallas violated her discovery obligations by "prevent[ing] the orderly discovery process involving her expert." The court reaffirmed that finding in the March 29 hearing. Specifically, the court found that Kallas failed to cooperate in scheduling her expert's deposition and failed to produce her expert's file. Because the trial court focused its analysis primarily on Kallas's counsel's failure to cooperate in scheduling the details of the deposition, we do so in our analysis as well.

¶ 26 The record supports the trial court's finding that Kallas, through her counsel, violated her discovery obligations by failing to cooperate in scheduling the expert deposi-

tion. At the January 31, 2013, hearing, Kallas's counsel expressly promised to work with Spinozzi to schedule the telephone deposition for the first week of March, and specifically stated that he or another lawyer would contact Spinozzi within forty-eight hours. He did not contact Spinozzi within that timeframe, and by the time the deposition was supposed to take place a month later, he still had not provided the expert's telephone number or current office address. Contrary to Kallas's contention on appeal, her expert disclosures did not contain that information because the expert apparently worked at several places with different addresses and phone numbers, and Kallas's counsel never supplied the necessary information to allow the deposition to occur. We reject Kallas's argument that merely proposing a date and time for the deposition was sufficient to comply with the court's order. Spinozzi could not possibly conduct a deposition by telephone without knowing the expert's telephone number, nor could he send a court reporter to an unknown address. The court properly concluded that Kallas's failure to provide this basic information violated the court's specific directives and prevented the expert deposition from taking place.

¶ 27 We next examine the trial court's conclusion that sanctions were warranted. In its March 25 order, the trial court found that Spinozzi was unfairly prejudiced by Kallas's uncooperative conduct and that Rule 37 sanctions were appropriate under the circumstances. The trial court explained and reaffirmed its reasoning for striking Kallas's expert at the pretrial readiness conference on March 29, 2013. The court applied the framework set forth in *Todd v. Bear Valley Village Apartments*, 980 P.2d 973 (Colo. 1999), a case that involved sanctions for failure to disclose evidence. *Todd* held that undisclosed evidence should not be excluded at trial if the court finds that the failure to disclose is either substantially justified or harmless. *Id.* at 981. Although the sanctions in this case were imposed primarily because of a failure to cooperate in scheduling a deposition rather than a failure to disclose evidence, we conclude that the trial court properly relied on *Todd* to guide its

analysis of whether sanctions were warranted here.

¶ 28 Emphasizing the broader context in which the violation occurred, the trial court on March 29 specifically found that Kallas's discovery violation was neither substantially justified nor harmless:

> This matter is now at least two and a half years old. It's been set for trial twice and continued at the request of the Plaintiff at least one time when he [sic] lost his first expert. During the January 31 telephone hearing, the Court impressed upon parties [the] need to get the Plaintiff expert deposition scheduled. [The] Court was assured that it would be scheduled the first week in March 2013.
>
> . . .
>
> [The] Court . . . believes that the Plaintiff has failed to comply with its obligations under Rule 26, Colorado Rules of Civil Procedure. Even after the court on its own motion held a hearing to obtain cooperation on the part of the Plaintiff in scheduling the, the expert deposition, it still didn't take place and I understand that [Kallas's counsel] is ill, but during the course of the hearing, I strongly suggested to him that he bring in another lawyer to assist him in the case. He has, apparently, three children that are all lawyers, to help in coordinating a scheduling of this deposition which is a very easy thing to do. For whatever reason, it has not been accomplished. The Plaintiff has not, in this Court's opinion, satisfied its obligations under rule 26 and the Court finds that there is no substantial justification to not do so. The Court also finds that given the closeness of the trial date and the inability of the Defendant to be able to depose Plaintiff's expert, provide that information to their expert prior to trial, that this failure on the Plaintiff's part is not harmless. Therefore, the Court will impose sanctions under Rule 37 and will strike the Plaintiff's expert.

¶ 29 The record supports the trial court's finding that there was no substantial justification for Kallas's failure to cooperate in scheduling the expert deposition. Kallas's counsel specifically promised that, notwithstanding his medical condition, he or an associate would contact opposing counsel to schedule the deposition. Kallas's counsel e-mailed Spinozzi's counsel multiple times between the January 31 hearing and the deposition date, demonstrating that he was not physically incapable of communicating with opposing counsel. Yet, he fails to explain why he did not provide the necessary logistical information in those e-mails. To the extent that his medical condition inhibited his cooperation, he also fails to explain why associates did not step in to help as promised. We therefore conclude that the trial court properly found that there was no substantial justification for Kallas's failure to schedule the deposition.

¶ 30 The record also supports the trial court's finding that this failure was not harmless. With trial only weeks away, Spinozzi was completely deprived of the opportunity to depose Kallas's expert—the primary witness in support of Kallas's claims. *See Todd*, 980 P.2d at 979 ("When [a party fails to provide expert disclosures] close to the trial date, it is likely that the failure to disclose will cause prejudice to the opposing party.").

¶ 31 Because the trial court properly found that Kallas's discovery violation was neither substantially justified nor harmless, we discern no abuse of discretion in the trial court's conclusion that sanctions were appropriate.

¶ 32 Finally, we address whether the trial court appropriately imposed the harsh sanction of striking Kallas's expert. Kallas contends on appeal that the trial court erred by failing to consider less severe sanctions. Given the impending trial date and the prejudice to Spinozzi if he were forced to proceed without the deposition, any lesser sanction almost certainly would have required a continuance. Thus, the question becomes whether the trial court properly considered and rejected the option of continuing the trial to give Kallas another opportunity to comply with her discovery obligations.

¶ 33 Contrary to Kallas's contention on appeal, the record shows that the trial court did consider whether a continuance would be appropriate. At the January 31 hearing, the trial court noted that the case was two and a

half years old and had already been set for trial a number of times. Based on this history, the court stated that it would not allow the April 15 trial date to be pushed back again. Later, in explaining its reasoning for striking the expert at the March 29 hearing, the court again referenced the age of the case and noted that the trial had previously been continued at Kallas's request when she lost her first expert. These statements on the record demonstrate that the trial court specifically considered and rejected the possibility of granting another continuance.

¶ 34 While we are mindful that litigation-ending sanctions are disfavored in Colorado, we nevertheless conclude that the trial court's decision to strike the expert rather than grant another continuance did not amount to an abuse of discretion. While judges "'must strive to afford all parties their day in court,'" *Trattler v. Citron*, 182 P.3d 674, 683 (Colo. 2008) (quoting *Todd*, 980 P.2d at 979), this goal does not preclude litigation-ending sanctions in all cases. The discovery rules were revised in large part to curtail abuses, which had been commonplace under the previous rules. *Todd*, 980 P.2d at 977 n.2. Under the new rules, trial courts are expected to "'assertively lead the management of cases.'" *Id.* (quoting C.R.C.P. 16, committee cmt.). And litigation-ending sanctions may be appropriate, given sufficiently serious discovery violations by a party or counsel. *See, e.g.*, *Cornelius*, 202 P.3d at 571; *Prefer*, 18 P.3d at 850.

¶ 35 Here, as the court noted, Kallas had already received a continuance on the eve of trial when her first expert withdrew. Her new expert's deposition was postponed in December of 2012 due to Kallas's counsel's medical condition. At that point, the expert deposition was the only remaining discovery matter to be completed before trial on April 15. The trial court proactively called the January 31 hearing to determine whether the parties could complete the deposition in time for trial, given Kallas's counsel's ongoing health problems. Kallas's counsel refused to consider bringing in associate counsel to assist with the case, insisting that he himself

would hopefully be able to complete the deposition and try the case on schedule. The trial court then made every effort to accommodate Kallas's counsel's medical condition, ordering Spinozzi either to pay for Kallas's expert to travel to Colorado or to conduct the deposition by telephone. As discussed above, Kallas's counsel's subsequent failure to cooperate in scheduling the deposition was unexplained and unjustified, even considering his serious medical problems. Additionally, Kallas failed to comply with the trial court's order to produce her expert's file.[1] Kallas's violations deprived Spinozzi of the opportunity to take the expert's deposition with trial only weeks away. Considering the totality of the circumstances, we conclude that the trial court was well within its discretion to determine that Kallas should not be granted yet another continuance to comply with her discovery obligations.

¶ 36 Moreover, nothing in the record shows that Kallas proposed to the trial court other lesser sanctions (such as an award of fees) beyond her request for a continuance, which as the trial court found, would not have mitigated the harm and prejudice to Spinozzi. *See Cornelius*, 202 P.3d at 572 ("Cornelius argues that, in response to the motion to dismiss [as a sanction,] he sought to reset the trial date to a later time, and with the additional time, he would have been able to comply with the disclosure requirements.... [However], Cornelius's assertion that, if given more time, he would comply with the disclosure requirements does not constitute a mitigating factor, and the ... court did not abuse its discretion in denying the motion [to continue].").

¶ 37 We therefore conclude, based on the record as a whole, that this is one of those rare cases with extreme circumstances where the trial court properly imposed what was effectively a litigation-ending sanction. In our view, the trial court went out of its way to be fair to both parties and balance managing the case with the problems Kallas experienced, including losing her first expert and her counsel's serious health problems. Nor can it be said that the trial court acted

---

1. We need not address whether the trial court would have been justified in striking Kallas's expert based solely on her failure to produce the expert file.

arbitrarily, given its thorough and detailed findings and reasons for reaching its decision to strike Kallas's expert. *Cf. Pinkstaff*, 211 P.3d at 704 (sanction of striking an answer held improper where the trial court did not make specific findings regarding what defendants failed to disclose or how they had otherwise failed to comply with the court's orders). Considering the totality of the circumstances, we conclude that the sanction of striking Kallas's expert was not an abuse of discretion, even though it ultimately led to the dismissal of the case.

¶ 38 We acknowledge that this result to some extent punishes Kallas for her counsel's violations. *See id.* at 705. The supreme court in *Pinkstaff* stated that "trial courts must endeavor to impose sanctions that are commensurate with the harm done while not unduly punishing parties for their attorney's misconduct." *Id.* We also recognize that Kallas's counsel had a professional duty to advise her about the risks of continuing to proceed with him as lead counsel, given his medical problems. *See* Colo. RPC 1.1, 1.3, 1.4, 1.16. There is nothing in the record indicating whether Kallas's counsel so advised her, and this appeal is not the proper forum to address that issue. However, in this case, the record shows that Kallas herself is not wholly without blame. The trial court gave Kallas several opportunities to seek alternative representation because of her counsel's serious illness. Kallas's counsel represented to the court that Kallas did not want another attorney to handle the case. When the trial court suggested at the January 31 hearing that Kallas bring in associate counsel, Kallas's counsel stated, "My client has been involved in this matter for, for a long, long time, and I on her behalf; and she is certainly not inclined to ... get somebody else to step in and handle the matter." Even when Kallas appeared on her own on the first day of trial, she stood by her current counsel and asked for a continuance so that he could try the case. Under these circumstances, the record shows that Kallas was, at least in part, responsible for how her case was prosecuted, including the delays and discovery violations that resulted in her expert being stricken.

¶ 39 For these reasons, we conclude that the trial court did not abuse its discretion in striking Kallas's expert.

### B. Motion to Continue

¶ 40 Kallas next contends that the trial court erred in denying her motion to continue the April 15 trial. Specifically, Kallas argues that her counsel's second accident on March 3, 2013, was an unforeseen and exceptional circumstance justifying a continuance. We reject this contention.

¶ 41 We review a trial court's decision to grant or deny a continuance for an abuse of discretion. *Cherry Creek Sch. Dist. No. 5 v. Voelker*, 859 P.2d 805, 809 (Colo. 1993). Continuances are granted only for good cause. C.R.C.P. 121 § 1–11. The trial court must consider " 'the circumstances of the particular case, weighing the right of the party requesting the continuance to a fair hearing against the prejudice that may result from delay.' " *Voelker*, 859 P.2d at 809 (quoting *Butler v. Farner*, 704 P.2d 853, 858 (Colo. 1985)). Trial continuances "should be limited to circumstances in which unforeseen and exceptional circumstances require diligent attorneys to request an adjournment." *Todd*, 980 P.2d at 976 (internal quotation marks omitted).

¶ 42 Here, the trial court explained its reasoning for denying Kallas's request for a continuance in a written order:

The court denies the motion to continue for reasons stated in the defense objection. Good cause to continue the trial has not been established. The court finds that plaintiff counsel's health issues were not unforeseeable [sic] and do not constitute exceptional circumstances under *Todd v. Bear Valley*. The court suggested months ago that plaintiff counsel bring in associate counsel to help try this case due to plaintiff counsel's health issues. Plaintiff counsel refused. This is the only case set for trial on the court's docket on April 15, 2013. The court has already continued this case once at plaintiff's request. The parties were advised by the court that this case would proceed to trial as scheduled. Plaintiff's submissions fail to include any reasonable timeline for plaintiff counsel to

be medically capable of trying this case. The case is already 2½ years old. CRCP 1 mandates a just, speedy and inexpensive resolution of this action. The court finds substantial prejudice to the defense if it were to grant plaintiff's motion to continue.

¶ 43 The record supports the trial court's finding that the health problems faced by Kallas's counsel when he moved for a continuance were foreseeable. After his first fall on November 28, 2012, Kallas's counsel spent over three months in hospitals and rehabilitation centers. His second fall on March 3, 2013, occurred just one day after he was discharged from the rehabilitation center. Given this timing, we cannot say that the trial court abused its discretion in finding that the second accident was not a completely independent circumstance. Even the attorney who appeared for Kallas's counsel on the morning of trial described the second accident as related to the first, stating, "He was hospitalized for some time, attempted recovery on his own, and at home, and again suffered a fall which caused him the current condition." Furthermore, and contrary to Kallas's argument on appeal, the record is clear that the trial court fully considered and understood the medical circumstances of Kallas's counsel's second accident. We therefore conclude that the record supports the trial court's finding that Kallas's counsel's ongoing medical problems were foreseeable and related to his previous accident.

¶ 44 Moreover, the issues raised in Kallas's motion for a continuance were the same issues that the trial court predicted and proactively tried to address months before. At the January 31 hearing, Kallas's counsel rejected the court's suggestion to bring in associate counsel, even though he was not sure when he would be capable of handling the case himself. When Kallas's counsel moved for a continuance on April 1, he had been living in medical facilities for over four months and still could not say when he would be capable of trying the case. We do not underestimate the significance of the health problems Kallas's counsel faced, but those problems did not diminish his obligation to represent his client. He admitted in the motion to continue that he was physically unable to adequately represent his client, but he remained unwilling to bring in associate counsel. In essence, Kallas's counsel was requesting an indefinite continuance because he could not say when, if ever, he would be able to try the case. Under these circumstances, we cannot say the trial court abused its discretion when it refused to delay the trial indefinitely pending his recovery at some unknown future time.

¶ 45 The record also supports the trial court's finding that Spinozzi would be substantially prejudiced by a continuance of the April 15 trial date. Spinozzi's written objection to the continuance motion details the many reasons, both financial and professional (including requirements as a medical professional to report Kallas's pending claim against him), why he had already been prejudiced by Kallas's conduct and the substantial delays in the case and why he would suffer further prejudice by another continuance of the trial. The trial court expressly credited these reasons in denying the motion to continue.

¶ 46 Contrary to Kallas's assertion, the trial court's ruling is not inconsistent with *Todd*. That case does not hold or even imply that any health issue is automatic grounds for a continuance. Rather, the supreme court in *Todd* concluded that, under the facts of that case, an attorney's emergency back surgery was an unforeseen and exceptional circumstance constituting good cause for a continuance. *Todd*, 980 P.2d at 976–77. Here, by contrast, Kallas's counsel faced protracted and ongoing health problems, could not say when he would be capable of trying the case, and refused to bring in associate counsel. Under these differing facts and circumstances, the trial court could properly find that counsel's medical problems in this case were foreseeable and did not constitute good cause for a continuance.

¶ 47 For these reasons, we conclude that the trial court did not abuse its discretion in denying Kallas's motion for a continuance.

## C. Motion to Dismiss

¶ 48 Finally, Kallas contends that the trial court abused its discretion in dis-

missing her claims for failure to prosecute on the day of trial. We disagree.

¶ 49 We review a trial court's decision to dismiss an action because of the plaintiff's failure to prosecute for an abuse of discretion. *Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co.*, 698 P.2d 1340, 1344 (Colo. 1985). "The burden is upon the plaintiff to prosecute a case in due course without unusual or unreasonable delay." *Id.*

¶ 50 On the first day of trial, Kallas appeared without counsel and without an expert witness. A different attorney made a statement on behalf of Kallas's counsel, but he did not enter an appearance to represent Kallas at trial. The attorney stated that Kallas's counsel was physically unable to try the case at that time. Kallas herself then stated that she was not ready to proceed to trial that day and requested a continuance.

¶ 51 The trial court dismissed plaintiff's claims with prejudice based on the following reasoning:

> We have no lawyer who's entered their appearance on behalf of the Plaintiff to pursue this claim on her behalf.... [W]e're being told that [Kallas's counsel] hopes that he'll be available to try this case sometime in the near future. No guarantee. We don't know exactly when he'll be available, if he'll ever be available.... [Plaintiff has] done absolutely nothing to prepare this trial.... I understand and I appreciate [counsel's] health condition, but that does not relieve this Court of its obligations under Rule 1 to secure a just, speedy, and inexpensive determination of every action. This case has another Party to it, that is the Defendant, who is a professional, and he's had to live with [this] case now for over two and a half years. I'm not in a position today to grant a continuance because of the Plaintiff Counsel's medical condition. He could have

easily brought in other Counsel to represent the Plaintiff in this case, and for whatever reason chose not to do that. And as I said, the Court saw this coming months ago, and attempted to rectify the situation at that time, and because of, um, [Kallas's counsel's] insistence that he would be trial Counsel, the refusal to bring in associate Counsel, we find ourselves here today with the Plaintiff not prepared to proceed to trial.

¶ 52 The court also noted that Kallas and her counsel violated the Colorado Rules of Civil Procedure and the court's orders by failing to schedule the expert deposition, failing to attend a court-ordered settlement conference, failing to appear at the mandatory pretrial readiness conference, and failing to file a trial management order, witness list, exhibit list, or jury instructions. *See Cornelius*, 202 P.3d at 571–72 (when faced with extensive nondisclosure by a party, a trial court does not abuse its discretion in dismissing a case with prejudice for failure to prosecute).

¶ 53 We discern no basis for reversing the trial court's dismissal of this case. As the trial court noted, on the first day of trial Kallas's counsel was still unable to represent his client, still unable to say when he would be capable of doing so, and still unwilling to bring in associate counsel. Without counsel or an expert witness, Kallas herself was unable and unwilling to prosecute her claims. On appeal, Kallas attempts to excuse her failure to prosecute by reiterating her arguments that (1) the court erred by striking her expert and (2) she was entitled to a continuance for her counsel's ongoing medical problems. We have already discussed and rejected those arguments above. Kallas points to no other basis for reversing the trial court's order. Accordingly, we conclude that the trial court did not abuse its discretion in

dismissing Kallas's claims for failure to prosecute.

III. Conclusion

¶ 54 The judgment is affirmed.

STERNBERG * and NEY,* JJ., concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2014.