24CA0181 Giangola v Wiseman 04-03-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0181
El Paso County District Court No. 22CV30294
Honorable David A. Gilbert, Judge

Amy Giangola,

Plaintiff-Appellee,

v.

Thomas Wiseman, Jr.,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Sullivan and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

Linden Kominek, P.C., Mary Kominek Linden, Colorado Springs, Colorado, for
Plaintiff-Appellee

Ross-Shannon & Proctor, P.C., Bradley Ross-Shannon, Joshua R. Proctor,
Lakewood, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Thomas Wiseman, Jr., appeals the judgment in favor of plaintiff, Amy Giangola, on her claim of negligence, asserting that the district court erred by denying his motion for a mistrial and his motion for a continuance.  We affirm.

## I.    Background

¶ 2    On a snowy day in March 2019, Giangola was stopped at a red light in her vehicle when she was rear-ended by Wiseman.  The next day, Giangola had pain and stiffness in her neck and lower back.  Over the next several months, Giangola received treatment from multiple medical providers for neck and back pain, as well as various neurological symptoms.  According to Giangola, she was unable to perform her job duties as an employee of a pet store after the accident and was eventually terminated from her employment.

¶ 3    In February 2022, Giangola sued Wiseman for negligence and negligence per se, seeking to recover damages for her injuries and losses caused by the accident.  Wiseman admitted that he was negligent but denied that his negligence caused Giangola's injuries.  Wiseman also asserted that Giangola did not mitigate her damages.

¶ 4    Trial was originally scheduled for May 2023.  Two weeks before the original trial date, Giangola moved to continue trial "[d]ue

1

to an unexpected conflict" regarding her expert. Wiseman did not oppose the continuance, and trial was reset for December 2023.

¶ 5 In September 2023, Giangola disclosed to Wiseman an independent medical evaluation report prepared by Dr. David L. Reinhard. That report identified Giangola's injuries and medical conditions resulting from the accident, including chronic neck and lower back pain, extremity numbness and paresthesia, migraines, incoordination and imbalance, muffled hearing, bladder urgency, and concussion-related cognitive issues. He attributed most of these symptoms to the aggravation of a previously asymptomatic congenital condition known as a Chiari I malformation. Dr. Reinhard recommended, among other treatment, a neurosurgical consultation to evaluate the Chiari I malformation and up to thirty follow-up neurology appointments over the next five years. He estimated the cost of Giangola's future treatment to be $28,047.

¶ 6 Dr. Reinhard's report was admitted at trial, and Dr. Reinhard testified consistently with the report. In particular, he testified that the aggravation of Giangola's Chiari I malformation was the primary cause of her prolonged symptoms. Giangola also testified, as did her treating chiropractor. Giangola requested $56,987 in economic

damages, consisting of the $28,047 in future medical expenses estimated by Dr. Reinhard and $28,940 in past medical expenses.

¶ 7 The jury returned a verdict in favor of Giangola and awarded her economic damages consistent with her request and Dr. Reinhard's estimate, in addition to noneconomic damages.

## II. Motion for Mistrial

¶ 8 Wiseman first contends that the district court abused its discretion by denying his motion for a mistrial after Giangola testified about a previously undisclosed neurosurgical evaluation that she underwent in September 2020. We disagree.

### A. Additional Background

¶ 9 In December 2019, Giangola's pain management provider referred her for a neurosurgical evaluation for her neck and back pain. Giangola testified on direct examination that in late 2020, after COVID-19 restrictions had been lifted, she "[took] the first appointment that [she] could get with [a] neurological surgeon."

¶ 10 On cross-examination, Wiseman's counsel again asked Giangola if she had followed up on the referral. When Giangola said she had, Wiseman's counsel pointed out that no records of that appointment had been produced. Giangola testified that she had

seen a neurosurgeon in New Mexico sometime around September 2020, but she did not know the date or the provider's name.

¶ 11   Wiseman moved for a mistrial based on Giangola's failure to disclose the neurosurgical consultation and any related records before trial. He pointed out that Dr. Reinhard (who had not yet testified) was recommending a neurosurgical consultation and up to thirty follow-up neurology appointments, but as it turned out, that consultation had already happened. He argued that Giangola's failure to disclose that consultation before trial violated her discovery obligations and put him in an "awkward position" of defending the case, "knowing that potentially there is a neurology record out there . . . that nobody even knows the provider for."

¶ 12   The district court denied the motion for mistrial, finding that Giangola's failure to disclose the consultation was of "no consequence . . . to the ability of the [d]efense to thoroughly and properly defend this case." The court explained that (1) Giangola was not seeking to recover the costs of the consultation, and (2) there was no indication that the consultation had any relevance to Dr. Reinhard's opinions regarding Giangola's future expenses. As to the second point, the court noted that neither the parties nor

Dr. Reinhard had any records of the consultation and there was no evidence that anything resulted from it. The court also found that, although there were "holes" in Giangola's production, there was "no clear determination of the reasons" for that nondisclosure that would warrant sanctions. The court allowed Wiseman to address the undisclosed consultation on cross-examination of Dr. Reinhard.

B. Standard of Review and Applicable Law

¶ 13 A mistrial is a drastic remedy that is warranted only when the prejudice to the moving party makes the trial unfair and cannot be remedied by other means. *Acierno v. Garyfallou,* 2016 COA 91, ¶ 26; *Margenau v. Bowlin,* 12 P.3d 1214, 1216 (Colo. App. 2000).

¶ 14 The district court is in the best position to evaluate the prejudicial impact of misconduct by opposing counsel and any irregularities at trial. *Acierno,* ¶ 28. We therefore review the denial of a motion for a mistrial for an abuse of discretion. *Id.* A district court abuses its discretion when its decision is "manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *Id.*

¶ 15 The district court may impose sanctions on a party who fails to make required disclosures. C.R.C.P. 37(c)(1); *see also Pinkstaff v.*

5

*Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo. 2009).  One

possible sanction when the nondisclosure has caused "significant

harm" is exclusion of the undisclosed evidence.  C.R.C.P. 37(c)(1);

*see also Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 977-78

(Colo. 1999).  But when precluding the undisclosed evidence is not

an appropriate sanction, the court may consider any other sanction

that is "proportionate to the harm."  C.R.C.P. 37(c)(1); *see also*

*Trattler v. Citron*, 182 P.3d 674, 682 (Colo. 2008).  The court should

impose the "least severe sanction" that will ensure compliance with

the discovery rules and "is commensurate with the prejudice caused

to the opposing party."  *Pinkstaff*, 211 P.3d at 702.

¶ 16     In making this determination, the district court may consider

the following nonexhaustive factors:

(1) the importance of the witness's testimony;

(2) the party's explanation for its failure to comply with the required disclosure;

(3) the potential prejudice or surprise to the party against whom the testimony is offered that would arise from allowing the testimony;

(4) the availability of a continuance to cure such prejudice;

6

(5)    the extent to which introducing such testimony would

disrupt the trial; and

(6)    the nondisclosing party's bad faith or willfulness.

*Todd*, 980 P.2d at 978.  The relevant inquiry is "not whether the

new evidence is potentially harmful to the opposing side's case," but

"whether the failure to disclose the evidence in a timely fashion will

prejudice the opposing party by denying that party an adequate

opportunity to defend against the evidence."  *Id.* at 979.

## C.    Analysis

¶ 17    Giangola concedes that she violated her disclosure obligations

by failing to disclose the September 2020 neurosurgical

consultation before trial.  *See* C.R.C.P. 16.1(k)(1)(B) (requiring a

claimant in a personal injury action to disclose "the names and

addresses of all doctors . . . who . . . provided services which are

related to the injuries and damages claimed"); C.R.C.P. 26(a)(1)(A)

(requiring parties to disclose "each individual likely to have

discoverable information relevant to the claims and defenses").

¶ 18    But even so, we conclude that the district court did not abuse

its discretion by determining that the nondisclosure did not warrant

7

the "drastic remedy" of a mistrial because Wiseman was not materially prejudiced by the nondisclosure. *Acierno*, ¶ 26.

¶ 19    The September 2020 consultation was not central to Giangola's claims or Wiseman's defenses. *See Trattler*, 182 P.3d at 682. Giangola did not seek damages for that consultation or for any follow-up treatment arising out of it. Although she sought damages for the cost of *future* neurological treatment, Dr. Reinhard's estimate of those costs did not depend in any way on the prior consultation. Indeed, Dr. Reinhard did not review any records of the consultation. And while the revelation of the September 2020 consultation may have been minimally relevant to Wiseman's theory that Giangola failed to mitigate her damages by timely seeking medical treatment, we cannot conclude that this single consultation three years before trial substantially undermined that defense.

¶ 20    Wiseman's assertion of prejudice rests not on the prejudicial impact of the testimony about the consultation itself but almost entirely on his speculation about what further discovery concerning that consultation might have revealed. *Cf. Margenau*, 12 P.3d at 1216 (noting that a mistrial may be warranted based on prejudice from improper testimony). He posits that Giangola's failure to

disclose the consultation "strongly indicates that [the] provider's opinions were not favorable to her case."  But nothing in the record supports that speculation.  *See People v. Ned*, 923 P.2d 271, 275 (Colo. App. 1996) ("Speculation of prejudice is insufficient to warrant reversal of a trial court's denial of a motion for mistrial."); *cf. Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 606-07 (Colo. App. 2007) (holding that plaintiffs' "speculation that they would have found relevant, useful evidence" if documents had been timely disclosed did not warrant a new trial).  And given the one-off nature of the consultation, it is at least as likely that the provider did not reach any definitive conclusions or recommendations.

¶ 21      That is how this case differs from *Crist v. Goody*, 507 P.2d 478 (Colo. App. 1972), on which Wiseman relies.  In *Crist*, the defendant presented previously undisclosed surveillance videos during trial that directly discredited the plaintiff's injury claims "for the obvious purpose of affirmatively [dis]proving" the plaintiff's case.  *Id.* at 480. In other words, the admitted evidence was itself highly relevant and damaging to the plaintiff's case.  The division held that, under those circumstances, the district court abused its discretion by denying the plaintiff's motion for a mistrial.  *Id.*  In contrast, the testimony

at issue in this case did not itself materially prejudice Wiseman's defense. Nor did Giangola rely on it to prove her case. The claimed prejudice arises from unknown evidence that was *not* admitted.

¶ 22 Moreover, to the extent the undisclosed consultation might have undermined Giangola's claims, Wiseman had the opportunity to cross-examine her about it. For example, he could have asked Giangola (but did not) about the conclusions and recommendations of the neurosurgeon she consulted. And he did question her about her failure to disclose the consultation, using that nondisclosure in closing argument to attack her credibility. Similarly, to the extent the consultation might have impacted Dr. Reinhard's opinions, the court expressly authorized Wiseman to cross-examine Dr. Reinhard concerning his unawareness of the consultation and how it might affect his opinions. Thus, while the testimony may have surprised Wiseman and prevented him from conducting discovery before trial, he was not denied the opportunity to defend against it.[1] *See Todd,*

---

[1] We recognize as a practical matter that Wiseman ran a risk by cross-examining Giangola about the substance of the consultation without knowing what her answers would be. But he at least had the opportunity to do so — even if that opportunity was not ideal.

980 P.2d at 979; *see also Trattler*, 182 P.3d at 682 (reversing sanctions where harm was, "at least, greatly minimized").

¶ 23 The record also does not indicate — and the district court did not find — any bad faith on the part of Giangola or her counsel in failing to disclose the consultation. *See Todd*, 980 P.2d at 978; *see also Warden v. Exempla, Inc.*, 2012 CO 74, ¶ 38 (holding that disclosure violation was harmless where "nothing in the record indicates that the [plaintiffs] acted in bad faith or delayed [the] disclosures to gain a tactical advantage"). Giangola's counsel explained that they were previously "unaware of" the consultation, and the court apparently credited that response. While we tend to agree with Wiseman that Giangola's counsel should have taken steps to discover and disclose this consultation — especially because Dr. Reinhard's report appeared to refer to it — their failure to do so does not appear to reflect any intentional misconduct.

¶ 24 Wiseman contends that the district court erred by failing to apply the *Todd* factors to his motion for a mistrial. But he did not cite *Todd* in support of his motion, and those factors — which inform whether a court should exclude the nondisclosed evidence, *see Todd*, 980 P.2d at 977 — are not a neat fit for a motion for a

mistrial.[2]  In any event, although the court did not cite *Todd*, its analysis touched on several of the most pertinent factors, including the importance of the evidence, Giangola's explanation for the nondisclosure, the potential prejudice to Wiseman, and the absence of any bad faith on Giangola's part.  *Id.* at 978.

¶ 25  Notably, Wiseman did not request any sanction or other remedy short of a mistrial.  He did not ask the court to strike Giangola's testimony or to preclude further reference to the consultation.  *See* C.R.C.P. 37(c)(1).  To the contrary, after Giangola mentioned the consultation during direct examination, Wiseman returned to the subject on cross-examination.  Nor did Wiseman request any kind of adverse inference or similar order, either as to his failure to mitigate defense or as to the conclusions of the undisclosed consultation.  *See* C.R.C.P. 37(b)(2)(A), (B).

---

[2] At the time of *Todd v. Bear Valley Village Apartments*, 980 P.2d 973 (Colo. 1999), C.R.C.P. 37(c) required exclusion of nondisclosed evidence unless the failure to disclose was substantially justified or harmless.  *Id.* at 977.  The rule now requires exclusion only where an unjustified nondisclosure would cause "significant harm" and preclusion is not "disproportionate to that harm."  C.R.C.P. 37(c)(1); *see* Rule Change 2015(05), Colorado Rules of Civil Procedure (Amended and Adopted by the Court En Banc, May 28, 2015), https://perma.cc/JH2T-MEHX.

¶ 26    Faced only with a motion for a mistrial, the district court did not abuse its discretion by determining that the nondisclosure did not make the trial so unfair as to warrant that drastic remedy.

### III.    Motion for Continuance

¶ 27    Wiseman next argues that the district court abused its discretion by denying his motion to continue after Giangola failed to ensure that her "will call" witness, Dr. Kerry Latch, was available for trial, as required by C.R.C.P. 16(f)(3)(VI)(A).  We again disagree.

### A.    Additional Background

¶ 28    The parties' expert disclosures were originally due on February 6, 2023 (for Giangola) and March 6, 2023 (for Wiseman).  Although the record does not include any expert disclosures by either party before those dates,[3] Giangola's witness list for the original trial date identified her treating providers as expert witnesses — including Dr. Sal S. Sandoval "and/or another representative of Pikes Peak Spine

---

[3] Wiseman's codefendant, who was represented by the same counsel, provided an expert disclosure in January 2023 that generically identified "[a]ny health care provider or records reviewer who has treated or examined Plaintiff and/or reviewed Plaintiff's records."  The disclosure was not submitted on behalf of Wiseman, and in any event, it did not name any specific expert witness.

and Joint" (PPSJ) as a "will call" witness. Dr. Sandoval's unavailability was the basis for Giangola's motion to continue trial.

¶ 29 After the continuance, expert disclosures were due on September 4, 2023 (for Giangola) and October 2, 2023 (for Wiseman). On September 1, Giangola disclosed Dr. Reinhard's report. That same day, Giangola also disclosed a report that she had received unsolicited from Dr. Latch, who was Dr. Sandoval's partner at PPSJ. Wiseman did not disclose any expert witness.

¶ 30 On October 23, the parties exchanged witness lists. Giangola identified Dr. Latch "and/or another representative of [PPSJ]" as a "will call" expert witness. Wiseman did not identify any of his own expert witnesses but listed Dr. Latch as a "may call" witness.

¶ 31 Two days before the pretrial readiness conference, and three weeks before trial, Wiseman learned from Giangola that she had been unable to secure Dr. Latch's presence at trial and would not be calling him as a witness. Based on that, Wiseman moved to continue the trial. He asserted that he had opted not to retain an expert because he deemed Dr. Latch's report favorable to the defense and had assumed Dr. Latch would be present to testify. He further explained that he had attempted to serve Dr. Latch with a

14

subpoena for the trial or a preservation deposition but had been unsuccessful. Wiseman acknowledged that he had no reason to believe he would be able to secure Dr. Latch's presence, but he requested a continuance so he could retain his own expert.

¶ 32    Giangola explained that she had experienced similar difficulties in contacting Dr. Latch and had presumed by early June that he likely would not cooperate. As a result, Giangola retained her own expert, Dr. Reinhard, to conduct an independent medical evaluation. Then, shortly before the expert disclosure deadline, she received an unsolicited report from Dr. Latch, which she disclosed to Wiseman. She did not say one way or the other at that point whether she intended to call Dr. Latch as a trial witness.

¶ 33    The district court denied the continuance. It noted that the case had been pending for more than eighteen months and was "not particularly complicated." It explained that if Wiseman believed Dr. Latch's report was favorable to him, he should have either tried to secure Dr. Latch's presence or retained his own expert earlier:

> In my opinion, the Defense had plenty of reason earlier to think that if they found something favorable in one of the expert reports, especially since they saw that the Plaintiff may be relying on a different expert,

> they had an incentive to A: try to secure an expert that the other side chose that may not be helpful to them and, in fact, may be helpful to the Defense. So they could've started as soon as that became apparent. And B: could have decided on a separate expert if they thought that was in their best interest.

The court also concluded that continuing the trial at that point would "increase the cost of [the case] . . . to an unacceptable amount" and be "prejudicial to the parties as a general matter."

## B. Standard of Review and Applicable Law

¶ 34 The decision to grant or deny a continuance lies within the district court's sound discretion and "will not be disturbed absent a clear showing of an abuse of discretion." *Cherry Creek Sch. Dist. No. 5. v. Voelker*, 859 P.2d 805, 809 (Colo. 1993).

¶ 35 A continuance of trial may be granted only for good cause. C.R.C.P. 121, § 1–11; *Todd*, 980 P.2d at 976. In determining whether good cause exists, the court must consider "the circumstances of the particular case, weighing the right of the party requesting the continuance to a fair hearing against the prejudice that may result from delay." *Kallas v. Spinozzi*, 2014 COA 164, ¶ 41 (citation omitted). Continuances should be reserved for

16

"unforeseen and exceptional circumstances [that] require diligent attorneys to request an adjournment." *Id.* (citation omitted).

¶ 36 Parties must exchange witness lists before trial, identifying each witness the party "will call" and "may call" at trial. C.R.C.P. 16(f)(3)(VI)(A). When a party lists a witness as a "will call" witness, "the party does not have to call the witness to testify, but must ensure that the witness will be available to testify at trial if called by any party without the necessity" of a subpoena. *Id.*

### C. Analysis

¶ 37 Wiseman argues on appeal that a continuance was warranted because Giangola violated Rule 16 by failing to ensure that her "will call" witness was available at trial. But Wiseman did not make this argument in the district court. In requesting a continuance, Wiseman did not alert the court that Giangola had designated Dr. Latch as a "will call" witness or that Giangola had violated Rule 16. We cannot conclude that the district court abused its discretion by failing to grant a continuance based on a rules violation that

Wiseman did not identify.[4]  *See Gestner v. Gestner*, 2024 COA 55, ¶ 18 ("In civil cases, issues not raised in or decided by the district court generally will not be addressed for the first time on appeal.").

¶ 38   In any event, with or without the Rule 16 violation, the district court did not abuse its discretion by concluding there was no good cause for a continuance.  Wiseman acknowledged that he did not know whether Dr. Latch would respond to a subpoena, and all of the parties' efforts to that point had failed.  Thus, there was no basis in the record to conclude that a continuance would have remedied Wiseman's underlying concern — Dr. Latch's absence.  And to the extent Wiseman sought to retain a new expert, his deadline for doing so had passed more than a month earlier.  His failure to timely retain an expert had nothing to do with Giangola's designation of Dr. Latch as a "will call" witness three weeks later.

¶ 39   Wiseman contends that he relied on Dr. Latch's report and presumed availability for trial in choosing not to retain his own

---

[4] Wiseman later raised Giangola's C.R.C.P. 16 violation in support of his motion to introduce Dr. Latch's report at trial, arguing that the report should be admitted as a sanction.  But Wiseman does not challenge the denial of that motion on appeal.  Our review is limited to the arguments before the district court at the time of the ruling on appeal.  *See Gestner v. Gestner,* 2024 COA 55, ¶ 26.

expert. But until Giangola listed Dr. Latch as a "will call" witness — three weeks *after* Wiseman's expert disclosure deadline — Wiseman had no reasonable expectation that Dr. Latch would appear at trial. Even assuming Dr. Latch's report was an expert disclosure, a party is not required to call their endorsed expert witness. *See Sovde v. Scott*, 2017 COA 90, ¶¶ 31-32. And as the district court pointed out, the apparent defense-friendly nature of Dr. Latch's report, combined with Giangola's retention of a different expert, should have alerted Wiseman to the possibility that Dr. Latch would *not* be called.

¶ 40 It is true that once Giangola designated Dr. Latch as a "will call" witness, Wiseman could presume that he would be available to testify at trial. But this lifeline, which later proved to be illusory, does not explain Wiseman's failure to retain an expert three weeks earlier. Put another way, while the "will call" designation may have appeared to give Wiseman a fortuitous second chance, its retraction did not put him in any worse position than he already was in.

¶ 41 Wiseman also argues that Dr. Latch's testimony was critical to his defense because his report rebutted Dr. Reinhard's opinions about causation and future treatment. We cannot assess this

assertion — which Giangola disputes — because Dr. Latch's report is not part of the record on appeal.[5]  *See McLellan v. Colo. Dep't of Hum. Servs.*, 2022 COA 7, ¶ 27.  But even if it were true, it would not require a continuance where Wiseman failed to endorse Dr. Latch as his expert, and even if he had, there was no indication his attendance could have been secured with additional time.

¶ 42    The district court also properly considered other factors weighing against a continuance, including the length of time the case had been pending, the likely duration of a further postponement, and the resulting increased costs to the parties.  *See Kallas*, ¶ 41 (requiring the district court to weigh the movant's right to a fair hearing against the prejudice that may result from delay). Although Wiseman asserts that any prejudice to Giangola would be alleviated by the accrual of prejudgment interest, that does not take into account the prejudice resulting from the prolonged litigation

---

[5] After Wiseman filed this appeal, he filed a "Motion to Add to the Record on Appeal" and attached Dr. Latch's report.  That motion was denied.  So though included in the electronic record (because Wiseman also filed his motion in the district court), the report is not part of our record on appeal.  *See* C.A.R. 10(a)(1) ("The record on appeal in all cases consists of . . . [a]ll documents filed in the trial court case as of the date of filing of a notice of appeal . . . .").

itself.  Regardless, the assessment of those factors fell within the district court's sound discretion.  *See Voelker*, 859 P.2d at 809.

¶ 43    Finally, Wiseman suggests that it was unfair for the district court to deny his motion for a continuance when it had granted Giangola's requested continuance seven months earlier.  But the considerations are different for a first unopposed continuance based on the unavailability of a party's own expert than for a second opposed continuance seven months later based on the unavailability of the opposing party's expert.  The district court did not abuse its discretion in treating different situations differently.

¶ 44    We do not condone Giangola's designation of Dr. Latch as a "will call" witness when she apparently, by that time, had no intention of calling him.  And we agree with Wiseman that Giangola's failure to ensure Dr. Latch was available to testify at trial violated C.R.C.P. 16(f)(3)(VI)(A).[6]  But under the circumstances of this case, we cannot conclude that the district court abused its discretion by denying Wiseman's motion for a continuance.

---

[6] In denying Wiseman's motion to introduce Dr. Latch's report, the district court found that Giangola did not intentionally try to mislead Wiseman or impede his ability to call Dr. Latch.

## IV.  Appellate Attorney Fees

¶ 45    We deny Giangola's request for her appellate attorney fees under C.A.R. 38 and section 13-17-101, C.R.S. 2024, on the ground that Wiseman's appeal is frivolous.  Although Wiseman did not prevail, we do not agree that his appeal was frivolous or lacking in substantial justification.  *See* C.A.R. 38(b); § 13-17-102(4), C.R.S. 2024; *In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

## V.    Disposition

¶ 46    The judgment is affirmed.

JUDGE SULLIVAN and JUDGE HAWTHORNE concur.